ERNST G. W. WOERZ, Respondent, v. CHARLES A. SCHUMACHER et al., Impleaded with SAMUEL WASSERMAN, as Receiver of the ABINGDON SQUARE SAVINGS BANK, Appellant.

1. COMPROMISE AGREEMENT MADE UNDER DIRECTION OF THE COURT — CONSTRUCTION AS TO INTEREST. An instrument of compromise, made under the authority of the Supreme Court, by a receiver of an insolvent savings bank, with its trustees, who had been sued for waste and mismanagement of its assets, is to be deemed to have been made simply in aid of the will of the court, is not an ordinary contract, nor necessarily subject to those rules of law which make interest allowable only because of some contract express or implied, or by virtue of some statute, or on account of the default of a party liable to pay.

2. INTEREST — REIMBURSEMENT OF TRUSTEES UNDER COMPROMISE AGREEMENT. Where such an instrument transfers to the trustees certain real estate of the bank in consideration of their paying a certain percentage of its debts, gives them a power of sale and further provides that they shall be *reimbursed* for their outlay before accounting to the receiver for any surplus, they are, upon such an accounting, entitled to interest on their advances made for the debts of the bank and upon their expenses, incurred in the management of the property before a sale of it was made by them, although no express provision relative to such interest is contained in the instrument.

3. INTEREST. Interest is allowable under such an instrument, in order to fully indemnify the trustees, is justified by the nature of the transaction or by usage and custom, and may further be deemed a proper exercise of equitable discretion.

*Woerz* v. *Schumacher*, 37 App. Div. 374, affirmed.

(Argued January 16, 1900; decided February 6, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 21, 1899, modifying and, as modified, affirming a judgment entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles F. Brown* and *Joseph A. Arnold* for appellant. The agreement does not provide for interest either on the sums paid to the former receiver, or on the moneys expended in the management and sale of the property. (37 App. Div. 378; *Lewis* v. *W. L. Co.*, 14 N. Y. S. R. 302; *Rodgers* v. *Clement*, 15 App. Div. 561; *Sandford* v. *Barney*, 50 Hun, 108; *Fowler* v. *Harts*, 36 N. E. Rep. 996; *Church* v. *Kidd*, 3 Hun, 254; *Matter of N. Y. & B. Bridge*, 137 N. Y. 95; *Reid* v. *R. G. Factory*, 3 Cow. 387.) In any view of the case, interest began to run only from the time the trustees were to be reimbursed. (1 Suth. on Dam. [2d ed.] 631; *Ledyard* v. *Bull*, 119 N. Y. 62; *Sprague* v. *Sprague*, 30 Vt. 483; 1 Sedgw. on Dam. [8th ed.] § 282; *Williams* v. *Sherman*, 7 Wend. 109; *Ten Eyck* v. *Houghtaling*, 12 How. Pr. 523; *Van Rensselaer* v. *Jewett*, 2 N. Y. 135; *Purdy* v. *Philips*, 11 N. Y. 406; *Wenman* v. *M. Ins. Co.*, 13 Wend. 267.)

*Samuel Untermyer* and *Moses Weinman* for Ernst G. W. Woerz, respondent. The plaintiff was entitled to charge interest on the advances made by the trustees. The agreement must be construed in connection with the circumstances surrounding its execution. (*Pease* v. *Barber*, 3 Caines, 266; *Foley* v. *Foley*, 15 App. Div. 276; *R. G. Factory* v. *Reid*, 5 Cow. 587; 2 Sedg. on Dam. [7th ed.] 174, 383; *Gillet* v. *Van Rensselaer*, 15 N. Y. 397; *Chester* v. *Jumel*, 125 N. Y. 237; *Dodge* v. *Perkins*, 9 Pick. 368; *Matter of N. Y. & B. Bridge*, 137 N. Y. 95; *Church* v. *Kidd*, 3 Hun, 254.) The fact that there was no obligation on the part of the receiver to pay any deficiency cannot affect the plaintiff's right to

recover interest. (*Murray* v. *Marshall*, 94 N. Y. 611; *Buckmaster* v. *Grundy*, 3 Gill, 626; *Campbell* v. *Mesier*, 6 Johns. Ch. 21; *Weeks* v. *Hasty*, 13 Mass. 218.) Interest is recoverable from the time of the advances made by the trustees. (*Gillet* v. *Van Rensselaer*, 15 N. Y. 399; *Foley* v. *Foley*, 15 App. Div. 276; *Eldred* v. *Eames*, 48 Hun, 253; *Carey* v. *Doyne*, 5 Ir. Ch. 104; *Chester* v. *Jumel*, 125 N. Y. 237; *Murray* v. *Marshall*, 94 N. Y. 611.) The Appellate Division properly allowed to the trustee the counsel fees incurred by him in connection with the trust. (Perry on Trusts, §§ 910, 917, 918; *Woodruff* v. *N. Y., L. E. & W. R. R. Co.*, 129 N. Y. 27; *Matter of Atty.-Gen.* v. *N. A. L. Ins. Co.*, 91 N. Y. 61; *Matter of Holden*, 126 N. Y. 589; *Trustee, etc.,* v. *Greenough*, 105 U. S. 527; *Wetmore* v. *Parker*, 52 N. Y. 450.)

*William C. Reddy* for Elizabeth Pomeroy, administratrix, etc., respondent.

O'BRIEN, J. The controversy in this case is between the plaintiff, who represents the trustees of an insolvent savings bank, and one of the defendants, who is the receiver of the same bank. About the year 1876 the institution failed and was put into the hands of a receiver, who distributed the assets and was subsequently discharged. The present receiver is his successor, appointed apparently for the purposes of this action to administer assets of the bank which have been realized since the discharge of the first receiver.

The action is one in equity for an accounting between the plaintiff, as the representative of the trustees, and the receiver, and the only question involved is with respect to the allowance of interest on certain sums of money advanced by the trustees to the first receiver in a transaction which will be presently referred to. The whole dispute arises upon the terms of a written instrument between the trustees and the receiver, bearing date December 12th, 1877. At that time the receiver had brought actions against the trustees to recover damages for alleged waste of the assets of the bank, and for mismanagement of its affairs. By the provisions of the instru-

ment these suits were compromised and settled, and the trustees stipulated to pay to the receiver thirty-five per cent of the debts owing by the insolvent bank, and the receiver stipulated to turn over to them certain real estate, assets of the bank, then supposed to be of the value of about $11,000. The trustees agreed to take and administer this property, and they had the right to sell the same at any time when, in their judgment, it was best.

It would be impossible, within any reasonable space, to give an intelligent idea of the various and somewhat conflicting provisions of this writing. It covers fifteen closely-printed pages in the record, and the real meaning is obscured by the use of a multitude of words, and by the repetition in many instances of the same thing in a slightly different form. Fortunately, however, we are now concerned with only a single provision of the instrument, and that may be stated in very few words. The writing upon its face shows that it was made on the part of the receiver by the authority and direction of the Supreme Court. The trustees on their part agreed to pay thirty-five per cent of the debts, as already stated, which percentage, it seems, amounted to something over $30,000. The receiver turned over to them the property referred to, and the trustees on their part stipulated that when the property was sold, in case the amount received exceeded the whole outlay of the trustees, they should pay to him any surplus in their hands after reimbursing themselves for the outlay thus made. This outlay, as specified in the contract, was the thirty-five per cent advanced on the bank debts and the proper expenses incurred by them in and about the management and sale of the property.

Between the years 1882 and 1893 the trustees succeeded in disposing of the property. In the meantime they had paid the taxes and had made some repairs upon it, and had received the rents. The total amount received by them, including rents, was about $87,000. In their accounting in this action they have charged to this property the thirty-five per cent advanced by them and the interest thereon from the time it

was paid, and also all sums expended for repairs and taxes, with interest, and they have given credit for the rents with interest thereon.

The single question now in dispute is whether they are entitled to charge any interest on the sums advanced by them, representing the thirty-five per cent and the expenses. The objection to allowing that charge is based solely upon the circumstance that the writing in question does not expressly state that they should be reimbursed with interest. All the issues in the case were determined by a referee, who decided that the plaintiff, under the provisions of this writing, was not entitled to interest, either upon the thirty-five per cent advanced or upon the expenses incurred in the care and management of the property. The Appellate Division, however, has reversed this judgment, and has held unanimously that interest should be allowed to the plaintiff upon both items.

I think the view taken of the question by the Appellate Division is correct, and it is very difficult to add anything in support of the argument contained in the very able opinion of that court. I do not think that the right to interest in a case of this kind, arising upon such a peculiar transaction, can be determined upon the strict rules of the common law. The instrument in question is not to be construed without reference to the nature of the transaction and all the surrounding circumstances. The law of interest, as applicable to a bond, a promissory note, or a covenant, is not necessarily applicable to a transaction of this character. It is quite true that the general rule with respect to interest is that it can be allowed only by virtue of some contract, express or *implied*, or by virtue of some statute, or on account of the default of a party liable to pay when it is allowed as damages for the default. This, no doubt, is the general rule both in law and equity. But this rule, like almost every other general rule, is not without some exceptions; and even within the limits of the rule who can outline with perfect accuracy the various contracts and obligations not providing for interest in express terms, but where the right to interest is to be implied? We have before us an

instrument which is perfectly clear, in one particular at least, and that is that the trustees were to be *reimbursed* out of the proceeds of the sale of the property before accounting to the receiver for anything. Now, who can say that a provision to reimburse under such circumstances does not include the right to interest?

But it is said the right to interest in this case rests upon a contract, which is entirely silent upon that subject. It is not claimed that there is anything in the contract which, in terms, excludes the right of the trustees in making an accounting to charge interest on the sums advanced. But the argument is based entirely upon the proposition that interest is not nominated in the bond.

I think this argument is faulty, since it assumes that the question is to be governed by the rules applicable to ordinary written contracts. The instrument is not, in any just sense, a common-law agreement or contract, where individual minds have met with respect to mutual stipulations. In a certain sense it is not a contract at all. The receiver, of his own will, had no power or capacity to execute it, or to bind any one by it. He was a mere instrument to execute the will of the Supreme Court and, hence, one of the real parties to the instrument is the court itself. If, instead of formulating this obscure and voluminous document, the trustees had appeared in open court and the presiding justice had directed the clerk to enter upon the records the substance of the transaction, that record would mean just what this writing does, and nothing different. It would be as obligatory upon the trustees who were present and consenting to it as is the more formal paper that we now have before us. So that this document, after all, is nothing more, in substance, than the record which the court has caused to be made of a certain proceeding had before it, where it directed certain assets of an insolvent bank to be turned over to the trustees, upon certain conditions and stipulations. One of the stipulations which the court assented to was, that the trustees should be reimbursed for their outlay before accounting for any surplus received upon a sale of the

property; and the court that had general jurisdiction over the whole matter has given construction to this record in the form of a judicial decision, and it has decided that the trustees are not *reimbursed,* within the meaning of that term as used by all the parties, unless they are allowed interest upon their advances. So that the precise question now before this court is whether the construction given by the Supreme Court to what I may call its own record, is erroneous in point of law.

That the court below had all the power, and could call into action all the rules prevailing in courts of chancery generally, with respect to the question before it, is a proposition which cannot be doubted. The trustees had nursed the property for more than fifteen years; in the meantime paying the taxes and expenses for repairs, and in the end succeeded in making a more favorable sale than was originally expected. The court, with all the circumstances before it, held that they would not be *reimbursed* for the moneys paid out by them, within the fair meaning of the term as used in the instrument, unless they were allowed interest. This court has no right to say that in this result any principle of law was violated, unless it can be shown that, upon no possible view of the case, can such a conclusion be sustained, either in law or in equity. This appeal, therefore, for several reasons cannot be sustained. (1) It cannot be shown that the word *reimburse,* as used in the instrument, necessarily means in law that the trustees should retain from the sale only the bare sums paid, without interest. The primary meaning of that word is to pay back, to make return or restoration of an equivalent for something paid, expended or lost; to indemnify; to make whole. (Black's Law Dic.; Webster; *Fuller* v. *Atwood,* 13 R. I. 316; *Phil. Trust, etc., Co.* v. *Audenreid,* 83 Pa. St. 264.) The court below was evidently of the opinion that the plaintiff would not receive an equivalent for what he had paid out, or be made whole, if he was denied the right to interest on the money advanced, and in this respect it cannot be said that there was any legal error in the decision. In this country interest is the natural growth, or incident, of money, and bears the same relation to it that rent does to land.

(2) But quite apart from the argument as to the meaning of the terms used, there are many cases where the right to interest is to be implied from the nature of the transaction or from custom and usage. In this case the plaintiff, in rendering the account, charged himself with nearly $20,000 interest on moneys received from rents and sales of the property. There is no provision in the written instrument providing for such a charge, and yet no one seems to complain of it. It is quite likely that the courts would never have been troubled with the question, except for the fact that the interest credited to the plaintiff upon the advances exceeds that charged to him upon the receipts by a considerable sum, leaving a balance in his favor. But, of course, if there was no right to allow interest in his favor upon the payments, there was no right to charge him with interest upon the receipts. But, it seems to me, that the account upon both sides was properly stated. In a recent work on the law of interest the principle is stated in these words: "An implied contract for interest arises when the parties make no express agreement for interest, but from the circumstances the law infers that they contracted in reference to a tacit understanding between them. Such contracts may arise in several ways." (Perley on Int. 20.) The learned author then proceeds to state when and in what cases this implied right to interest arises, and among the cases are those where, by the usage of trade or business, it is reasonable to infer a tacit understanding to pay or charge interest. The court below in this case held that the transaction in question was such a case, and I am unable to give any reason to show that it was wrong.

(3) But there are many cases where interest may be charged or allowed by courts of equity in the exercise of a sound discretion. The learned author just quoted states the law in these words: "The rule in England for the allowance of interest in equity appears to be narrower than it is in America at law. Here, upon demands bearing interest at law, the court of equity is bound to allow it; but where the demand does not bear interest at law, it will or will not be allowed

68

according to the equity of the case, in the discretion of the court." (Perley on Int. 301.) And that is the rule followed in courts of equity.

It may be safely asserted that no case can be found which limits the right to interest upon an accounting in equity to such claims only as interest is recoverable upon at law. The practice in chancery is as stated by the learned author above cited. (*Hunt* v. *Smith,* 3 Rich. Eq. 466; *Pettus* v. *Clawson,* 4 ib. 92; *Hollister* v. *Barkley,* 11 N. H. 511.) The system of chancery rules formerly existing in this state permitted the master, in cases of accountings, to allow interest "as shall be just and equitable," in cases where not recoverable at law; and such was the practice of the court. (2 Barb. Ch. Pr. [2d ed.] 515; 2 Daniel's Ch. Pr. [6th ed.] 1251, 1257.) The rules and practice of the court are an essential part of equity jurisprudence, and a departure from them may be ground for reversing an order or judgment. (2 Barb. Ch. Pr. [2d rev. ed.] 351; *In re Livingston,* 34 N. Y. 555.)

It is well settled that in an action at law upon a bond the recovery cannot, in any case, exceed the penalty, even though the debt and accumulated interest shall exceed that sum, and the same rule applies to an action to foreclose a mortgage given to secure the bond. But where the mortgagor files a bill to redeem, a court of equity will compel him to pay the whole interest, without regard to the penalty. (*Mower* v. *Kip,* 2 Edw. Ch. 165; 2 Daniel's Ch. Pr. 1254.) These authorities, and others that might be cited, show that interest is allowed in some cases by courts of equity, when it would not be recoverable at law, and in such cases it is allowed or refused by the court in the exercise of a sound discretion. That power and discretion has been exercised in this case, and a court whose jurisdiction is limited to questions of law cannot disturb the judgment.

The suggestion that, inasmuch as the failure of this bank and the consequent loss to depositors, was due to the mismanagement of the trustees and, therefore, interest should not be allowed, may be attractive, but it will not bear very close

examination. In the first place the trustees, probably, would not admit the fact, and certainly they have never been heard upon the charge. Moreover, there is no finding in this record of the fact, if it is of the slightest consequence in the case. What we do know is that a part of the assets, valued at $11,000, was taken over by the trustees under the arrangement in question, and subsequently sold for nearly eight times that sum. That fact, and what we know of the business situation at the time of the failure, shows that this small bank went down during a period of great depression in real estate and other securities that was fatal to many much stronger institutions. There are so many causes that might have produced the failure that it would not be quite just to impute it, without any evidence, to the misconduct of the trustees, even if any one can suppose that it has any bearing upon the question now before us.

The judgment is right and should be affirmed, with costs to the plaintiff and the receiver, to be paid out of the fund.

HAIGHT, MARTIN and VANN, JJ., concur; PARKER, Ch. J., BARTLETT and LANDON, JJ., dissent.

Judgment affirmed.