## REVERE COPPER & BRASS, Inc., v. ADRIANCE MACHINE WORKS, Inc.
#### No. 280.

Circuit Court of Appeals, Second Circuit.
April 15, 1935.

Almet Reed Latson, of New York City, for Adriance Machine Works, Inc.

Williams, Rich & Morse, of New York City (Henry D. Williams, Howard M. Morse, and Giles S. Rich, all of New York City, of counsel), for Columbia Machine & Stopper Corporation.

Shiland, Hedges & Pelham, of New York City (Arleigh Pelham, of New York City, of counsel), for Jean Adriance Dole's estate, Francis H. Moses, James T. Berney, James F. Hubbell and Shiland, Hedges, Nicoll & Pelham.

Weissberger & Leichter, of New York City, for Revere Copper & Brass, Inc.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

These appeals were taken from an order made upon hearing exceptions to the report of a special master recommending the allowance of contested claims in an equity receivership. The claims were filed by the estate of Jean A. Dole for rent and money loaned; by Francis H. Moses for a balance claimed due for salary as president of the defendant; by James F. Berney for a balance of his salary as treasurer; by James F. Hubbell for salary as secretary; and by a firm of attorneys for professional services and disbursements in behalf of the defendant. The claims of the Dole estate, of Hubbell, and of the attorneys as recommended for allowance by the special master were all reduced and allowed in part; the claims of Moses and Berney were disallowed. The Dole estate, Moses, Berney, and Hubbell appealed as claimants. The plaintiff and Columbia Machine & Stopper Corporation, a creditor, appealed from the order in so far as the claims of the Dole estate and Hubbell were allowed and the claim of the attorneys was allowed in excess of $1,933. The receiver appealed from the order of allowance to the Dole estate.

The defendant is a corporation which was organized by a former husband of Mrs. Dole and was successfully conducted by him until he died. After his death its needs for financial assistance were in part met by Mrs. Dole, who was its vice president and principal stockholder as well as one of its directors. From April 25, 1930, to August 22d in that year, she made ten cash advances to the corporation in varying amounts which together made up the sum of $99,500. The cashbook of the defendant shows the receipt of these sums, and while the entries do not show that the cash was all received from Mrs. Dole, that is not now disputed. The cashbook entries were posted to a "Suspense Account" in the ledger and were so carried until some time in January, 1931, when they were entered as credits in her general account as of December 31, 1930, by accountants who were then working on the books. A prior loan made by Mrs. Dole to the corporation had been entered upon the ledger under "Special Loan Account" and had been ratified by resolution of the directors. It is largely because of the more formal way the prior loan was treated by the defendant that these advances have been disputed as loans and claimed to be gifts or additional capital contributions by Mrs. Dole. But whether they were loans or not is a question of fact. Both the special master and the trial judge have found that they were loans, and contrary inferences are not sufficiently potent to justify reversal on the evidence. That being so, interest was properly allowed as a part of the amount due. See, Woerz v. Schumacher, 161 N. Y. 530, 56 N. E. 72.

The part of the claim based upon rent was supported by uncontradicted evidence that the defendant occupied premises be-

longing to Mrs. Dole; that the initial occupancy was under a five-year lease dated January 1, 1920, which required payments by the defendant of $18,000 per year for the first four years and $22,000 for the last year in addition to certain items made up of taxes, insurance premiums, interest, and payments on the principal of a mortgage, which in all came to more than $50,000. A renewal term for a like period at a rental similarly computed but somewhat less in amount went into effect unless the defendant gave notice of an intention not to renew. No such notice was given, but there was evidence that the parties agreed some time after the original term expired to a flat rental of $52,000 per year to be credited to Mrs. Dole monthly upon the books of the defendant. After January 1, 1930, the defendant held over without renewal of the lease. From then until March 31, 1932, rent is now claimed. The special master and the court in determining the value of the use of the premises for this period disregarded the rental reserved in the lease in view of the fact that Mrs. Dole was both the landlord and the principal stockholder of the tenant. The claimant does not object to this method, and we, accordingly, accept it for present purposes since, the amount allowed being less than the rent reserved, no other party is adversely affected. The special master considered the various factors in evidence bearing upon the question of fair value and arrived at the sum of $45,000 per year as the yearly rent he recommended for allowance. The court reviewed the matter on the same basis and reached the conclusion that $40,000 per year was the fair amount. Whether one figure or the other is to be taken as correct depends upon the weight to be given the evidence in the light of many circumstances relating to values which are themselves capable of expression in terms of money only as the application of sound judgment dictates. We have considered the evidence and have reached the conclusion that the action of the trial judge was justified. The allowance of this claim is affirmed.

■ The claims of Moses and Berney consisted of debit and credit items which were all undisputed except for the salary each claimed to be due him for the two years and the three months just preceding the receivership. To prove these salary claims, a resolution of the board of directors of the defendant passed in June, 1926, fixing the salary of Moses as president at $17,500 per year and that of Berney as treasurer at $12,-000 annually was relied on. The claims were computed on this basis and so recommended for allowance by the special master. It was shown, however, that the books of the defendant did not contain entries crediting the claimants with such salaries for the period in question and that in 1931 they both executed an income tax information return in behalf of the defendant for the year 1930 showing a net loss of $285,270.41 for that period. The return was made on the accrual basis, and in it the salary of Moses for the year was stated to be $7,617.69 and that of Berney $4,577.57. These amounts were explained to the satisfaction of the special master as being what was actually received by these officers in the year on account of their salaries previously determined by the resolution referred to above, and there is much force in the explanation. Nevertheless, the burden to prove their claims was upon the claimants and the evidence was conflicting. It was certainly not unreasonable to believe that when the corporation became a losing concern the salaries of these officers were reduced. The absence of credits upon the books in the amount of the old salaries is inconsistent with their present contention and the tax return they signed tends to show that their salaries were reduced. While, of course, not conclusive against the claimants, these circumstances are enough to so weaken their proof by virtue of the 1926 resolution that we think the court was justified in holding that they did not prove their claims for salaries computed on the 1926 basis.

■ The claim of Hubbell as filed was based upon salary at the rate of $2,520 per year. His salary was set at that figure in the 1926 resolution and the income tax return before mentioned showed it at the same amount for the year 1930. He was paid all but $90 for the year 1927 and received nothing thereafter. During the period subsequent to 1927 he kept no minutes of meetings and proved only that he conferred informally with his associates in the defendant corporation as it was thought occasion required. The court considered the proof and reached the conclusion that he did not in any real sense act as secretary of the corporation during the period for which he filed a claim for salary. Certainly his right to the secretary's salary previously voted was contingent upon his performance of the secretary's duties. We think the evidence warranted the conclusion that the office of secretary had become merely nominal during that period. He was allowed, however,

the balance claimed for 1927 and one-half of the amount claimed for the subsequent period. As he failed to prove that he rendered the usual services of a secretary to the corporation, he failed to prove a condition precedent to establish his right to the salary voted, and we agree with the trial court that the amount allowed him was ample for such desultory services as he did perform.

The claim of the attorneys for the defendant was for services performed from December 12, 1927, to the time the receiver was appointed. There was, as might be expected, no price set in advance. The amount due was whatever sound judgment should decide upon the proof was fair and reasonable compensation for what was done. The most that can be said is that that matter was primarily for the trial court, and we find no basis for holding that the amount allowed was not fair and just.

It is strenuously insisted by the receiver, however, that the officers and directors of this corporation were guilty of such mismanagement and waste that upon the proper allowance of set-offs nothing could be found due upon the claims filed excepting only that of the attorneys. The special master considered this phase of the matter and found no mismanagement. The trial court, being of the opinion that no set-offs were justified as a matter of law, did not pass upon the facts but indicated that they could only be resolved in a plenary suit.

In an effort to keep the expenses of litigation in this receivership from becoming excessive, we will assume arguendo that set-offs might be allowed and consider the merits.

The claim is based upon four efforts to manufacture and sell patented machines. All these efforts were unsuccessful and resulted in substantial losses. As found by the special master: "The business of the company was the manufacture of machinery and mechanical devices. It involved the investigation of patented inventions; the determination of whether the invention would be likely to prove of commercial value; whether the company's factory equipment was adapted to its development and production; and negotiation with the inventor as to profit sharing or other compensation."

In 1925 the officers of the defendant created the Bayfield Sales & Equipment Corporation in connection with the exploitation of a patent for machines to print raised letters and $38,675.96 was lost. A similar result to the extent of $28,866.76 was experienced in an attempt to build and sell a patented magnetic advertising machine. The Sales Adtractor Corporation was organized for this purpose. In 1927 Thompson-Adriance, Inc., was organized as a part of an effort to make and sell patented water meters and $72,675.75 more was lost. The other unsuccessful venture was an attempt to revive the failing business by making patented voting machines for the Shoup Voting Machine Corporation. The loss this time was $84,979.38.

Although the Shoup Voting Machine Corporation was not a good credit risk and the other corporations were financially unstable and may fairly be called the creatures of the officers of the defendant, the special master was justified by the evidence in finding that this business was all undertaken in the belief that the machines had sufficient merit to make their manufacture profitable. The arrangements did give the officers an opportunity, perhaps, to take unfair advantage of the defendant in the event that profits were made, but there is nothing to show that they would have done so. On the contrary, it is fair to believe, as the special master did, that all of these transactions were undertaken for the benefit of the defendant in an honest and reasonable belief that they were good risks in line with the kind of business it was organized to do. The officers and directors were mistaken, as events have proved; but they were, nevertheless, merely exercising their business judgment within the limits of the discretion they possessed. At least, there was no substantial proof to the contrary and no right to set-off was established.

Order affirmed.