Breitel, J.
 

 The defendant State Budget Director appeals in a declaratory judgment action. Upon motion for summary judgment the Supreme Court, Albany County, granted judgment for the plaintiff, New York State Thruway Authority, by order entered June 17, 1968 (57 Misc 2d 181). The Appellate Division, Third Department, unanimously affirmed (31 A D 2d 563).
 
 [1]
 

 Involved on this appeal is the statutory authority of the Director of the Budget on behalf of the State to require the Authority by agreement to pay interest on advances made to the State Department of Public Works for the Authority’s benefit. It is concluded that the director is neither directed nor authorized to require payment of interest on the moneys advanced, and that the order of the Appellate Division ought to be affirmed.
 

 Between 1945 and 1951 the State appropriated to the Department of Public Works as advances for the benefit of the Authority, or to the Authority, out of the post-war reconstruction and capital construction funds, some $81,250,000
 
 [2]
 
 , the principal part of which consisted of an appropriation of $80,000,000
 
 *154
 
 to the Department of Public Works in 1951 (L. 1951, ch. 44, § 6, as amd. by L. 1951, ch. 210, ■§ 12). In succeeding years, through 1956, the balance of the $80,000,000 appropriation remaining unused was reappropriated.
 

 Subdivision 2 of section 357 of the Public Authorities Law provides that the Authority, on assuming jurisdiction over a part of the Thruway, “ shall be indebted to the state * * * in an amount equal to the cost of real property and rights therein acquired by the state * * * and the cost of construction by the state [of that part of the Thruway]. The authority and the state director of the budget shall enter into an agreement that such indebtedness shall be paid at such time or times and in such manner as such agreement shall provide ”. Subdivision 2 of section 93 of the State Finance Law provides that "the state comptroller is * * * authorized to * * * receive from * * * any *
 
 * *
 
 public authority amounts of money equal to the amounts of money expended by the state in behalf of
 
 * * *
 
 such authority * * * so that the state shall be reimbursed for any and all such appropriations and advances.”
 

 Between 1950 and 1965 the parties entered into a series of agreements providing for the repayment of advances made by the State. Agreements dated September 28,1950 and March 15, 1951, covering advances made before the $80,000,000 appropriation, contained no provisions for interest. The initial agreement dated March 31, 1951 covering the $80,000,000 appropriation also contained no interest provision. It provided for reimbursement of $50,000,000 out of the proceeds of the Authority’s first bond issue guaranteed by the State, with any advances in excess of $50,000,000 reimbursed out of the proceeds of the next guaranteed bond issue. When it became apparent, however, that the first guaranteed bond issue of $500,000,000 would be insufficient for both completion of the Thruway and repayment of the advances, a new agreement was executed, dated November 27,1953, providing the advances would be reimbursed out of the proceeds of a second bond issue but that, if such a bond issue were not authorized, that repayment would be made out of annual surpluses. For the first time, an interest charge, of 3%, was included) to be collected on the balance outstanding six years after the Thruway was open to traffic.
 

 
 *155
 
 No reference to interest was made in the superseding agreement dated May 24, 1954, which contemplated repayment not later than October 1, 1956. Because of the deterioration of the municipal bond market, plans for the issuance of bonds to raise funds to reimburse the State were discontinued and, by a supplemental agreement dated September 29,1956, April 1, 1958 was .set as the time for repayment of the entire debt. Interest of 2.6828% per annum was charged over the extension period. In 1957 repayment was again postponed until April 1, 1959, with 2.9% interest until the date of payment by the second supplemental agreement dated October 28, 1957. The repayment date was postponed several times, through correspondence between the parties, to February 28,1962.
 

 By an agreement dated February 28, 1962, it was recited that the Authority had doubt as to the power of the director to exact interest, and it was agreed to study and discuss the issue so as to resolve it without a submission to a judicial determination. By agreement, dated February 27, 1963, however, upon the request of the First Deputy Comptroller, it was stipulated that any reduction or elimination of interest would require approval by the Legislature, a court of competent jurisdiction, or the Attorney-Greneral. In an agreement dated February 28, 1964 the parties agreed to submit the question to the Appellate Division, Third Department.
 

 The final agreement, dated March 1, 1965, recited that the 1957 agreement, the last to stipulate a rate of interest, had provided for interest at the rate of 2.90% per annum from April 1,1958 to the date of the payment, and that the Authority now agreed to pay such interest if the legality of interest charges were upheld by final judicial determination. Throughout the period of these successive postponements a substantial portion of the advances were repaid.
 

 The trial court, reading together section 357 of the Public Authorities Law and section 93 of the State Finance Law, held that the director was without authority to impose interest (57 Misc 2d, at p. 184). The Appellate Division, while affirming, held, however, that the final contract did not expressly impose interest, and that no interest could be implied in light of the long-term dispute between the parties as to whether interest should be paid. Having rejected the possibilities of express
 
 *156
 
 or implied contract the Appellate Division concluded that interest was due only if required by law apart from any agreement. No such requirement was found. The court’s analysis made it unnecessary to decide whether the director had the power to contract for interest under the statutes. (31 A D 2d, at p. 564.)
 

 This extended recitation of the negotiations and agreements of the parties demonstrates two things. First, that in the earlier stages of repayment, the parties anticipated that the advances would be short-term, and no arrangements were made for an extended period of repayment, or for interest. Second, starting in 1953 it was agreed that interest on the balance then outstanding was to be imposed. Thus, although the parties disputed the power of the director to contract for interest, there is no question that interest was agreed upon at specific rates if the director had the power to require interest.
 

 Since the parties .agreed that interest would be paid on the outstanding balance of the advances, the question of the director’s authority to exact such interest must be resolved.
 

 There is no dispute that there is no explicit statutory authorization for the exaction of interest on these advances. The acts authorizing the bulk of the appropriations, some $80,750,000, direct that the appropriation is to be repaid
 
 ‘ ‘
 
 in the manner provided by section three hundred fifty-seven, subdivision two, of the public authorities law ”. The statute creates an indebtedness of the Authority to the State of
 
 “
 
 an amount equal to ” acquisition and construction costs assumed by the State. The director and the Authority are directed to enter into an agreement covering the
 
 “
 
 time ” and “ manner ” of payment of the indebtedness. Moneys are to be received by the Comptroller and deposited in the Capital Construction Fund, the source of the original appropriation. Subdivision 2 of section 93 of the State Finance Law, covering repayment to the Capital Construction Finance Fund, provides that the Comptroller is authorized to accept an amount equal to the amount of money expended by the State.
 

 The director argues that the direction in section 357 to the parties to agree on the ‘ ‘ manner ’ ’ of payment is an authorization to agree upon interest. Additionally he argues that interest is to be implied from any indebtedness, and that a common-
 
 *157
 
 law rule providing interest on money advanced apart from any express term therefor in a contract is equally applicable in the construction of a statute providing for advances.
 

 Manner of payment, however, more aptly refers to the procedure of payment, rather than the increments on the debt. Thus it authorizes the several schemes for repayment reached by the parties, apportioning payment out of capital funds, present and future bond issues, and operating revenue.
 

 The argument that interest is to be implied from any indebtedness is one with the general argument that common-law principles mandate interest in the absence of provision to the contrary.
 

 The law in New York appears at one time to have been unsettled as to what presumption was to arise in the absence of an express agreement as to interest on an advance. Thus in
 
 Gillet v. Van Rensselaer
 
 (15 N. Y. 397, 399) it was said: “ [U]pon money advanced by one person for the use of another, interest is recoverable from the time of the advance, in the absence of any express agreement upon the subject, unless it appears from the circumstances under which and the purposes for which the advance is made, and the relations existing between the parties, either that it was their intention that interest should not be paid or that it would be inequitable to exact it.”
 

 On the other hand, in
 
 Woerz
 
 v.
 
 Schumacher
 
 (161 N. Y. 530, 534; emphasis in original), it was said: “ It is quite true that the general rule with respect to interest is that it can be allowed only by virtue of some contract, express or
 
 implied,
 
 or by virtue of some statute, or on account of the default of a party liable to pay when it is allowed as damages for the default. This, no doubt, is the general rule both in law and equity.”
 

 The court wisely added, however: “ But this rule, like almost every other general rule, is not without some exceptions; and even within the limits of the rule who can outline with perfect accuracy the various contracts and obligations not providing for interest in express terms, but where the right to interest is to be implied? ” (161 N. Y., at p. 534.)
 

 Thus, in
 
 Rodgers
 
 v.
 
 Clement
 
 (162 N. Y. 422, 425-426), it was said in reference to advances to a commercial firm that
 
 “
 
 the general rule is to allow interest upon the advances, although
 
 *158
 
 there was no express agreement by the firm to pay it, in the absence of some agreement to the contrary, express or implied This was not so much a contradiction of the
 
 Woem
 
 case
 
 (supra)
 
 as a recognition that the commercial context of the transaction might supply the necessary implication of interest.
 

 The modern rule as to interest in the absence of default is as expressed in the
 
 Woerz
 
 case
 
 (supra)
 
 with the added proviso that a statute may require interest, even in the absence of an express or implied contract (see
 
 Matter of City of New York [Rockaway Beach],
 
 288 N. Y. 51, 56-57;
 
 Matter of Ittleman [City of New York],
 
 286 N. Y. 150, mot. for rearg. den. 286 N. Y. 695; see, also, 47 C. J. S., Interest, § 3; 32 N. Y. Jur., Interest and Usury, § 7). In short, the obligation to pay interest on an indebtedness must be expressed or implied in fact, or else it does not exist. It is not implied as a matter of law under general principles of law.
 

 Thus, to the extent that common-law rules are relevant in ascertaining whether interest accrued or could accrue on the debt owed by the Authority, it must, be presumed, in the absence, as here, of express or implied provision for interest, that interest was not contemplated and, therefore, was not authorized by the statutes providing for the indebtedness.
 

 Moreover, regardless of how agreements to repay advances may be construed in a private or commercial context, where the circumstances easily give rise to implied in fact obligations to pay interest, the same may not be assumed as to an advance by the State to a public authority. The financial and statutory history and the relations between the State and this Authority suggest very strongly that interest was not contemplated. The director agrees, at least, that this is so as to the advances that were not intended, to go beyond the early formative years before 1954—the short-term period before the Thruway was financed by its own bond issues or revenues.
 

 For the reasons already observed, in this intergovernmental context and in light of the history of the relationship between the State and this Authority, the failure of the .statute, its draftsmen, or the Legislature to contemplate the payment of interest is suggestive of the director’s lack of power to exact it unless the enabling statute specified otherwise.
 

 
 *159
 
 Accordingly, the order of the Appellate Division should he affirmed.
 

 Chief Judge Fuld and Judges Burke, Soileppi, Bergan and Jasen concur.
 

 Order affirmed, without costs.
 

 [1]
 

 . An earlier motion to dismiss the complaint for lack of jurisdiction had been denied
 
 (New York State Thruway Auth.
 
 v.
 
 Hurd,
 
 54 Misc 2d 1057, affd. 29 A D 2d 157).
 

 [2]
 

 . What part of these advances was used for Thruway. purposes and is owing to the State was the subject of another action and appeal (see
 
 New York State Thruway Auth.
 
 v.
 
 State of New York,
 
 decided simultaneously herewith 25 N Y 2d 210).