OPINION OF THE COURT
Walter J. Relihan, Jr., J.
This is a motion by defendant to set aside a verdict in favor of plaintiff (CPLR 4404). The defendant is an architectural firm. The plaintiff is the sole shareholder of a corporation which, over a 20-year period, filled printing and document reproduction orders for the architects. The plaintiff took an assignment of the claim and has pursued the matter, pro se, through trial to verdict.
The parties maintained a running account. Jobs were performed, as ordered, but bills were sent by the plaintiff on a very irregular schedule. Similarly, payments were made by defendant on a ragged and unpredictable basis. Often, many months would pass between the presentation and the payment of installments on the bills. Finally, in 1981, the plaintiff testified that he began adding interest to the bills which had gone unpaid for more than 30 days, at the rate of 1V2% per month and claims to have compounded the interest monthly.
No express notice of the new billing policy was given to defendant. However, where arrearages occurred in bills which were included in the running account, as periodically submitted, an entry labelled "finance charge” would appear at the foot of the invoice sent to defendant. It would show the percentage of interest applied, ranging between 1% and 15%, and the dollar amount which such interest had generated. The variance in the percentages, plaintiff testified, stemmed from the differing amounts which might be in arrears on any given bill, the duration of the arrearage, the effect of grace periods, and the "rounding” of the figure due, up or down, as the plaintiff might determine.
On summation, plaintiff presented an arithmetical exegesis which tended to show that the "finance charge”, shown on his bills, bore a relation to the imposition of interest at 1 Vi% per month or 18% simple interest per annum. Defendant made no inquiry about these charges and made payments which often satisfied some part but not all of the bill. It could be argued, therefore, that defendant paid interest without objection.
On an earlier motion, this court (Ellison, J.) ruled that the final bill submitted by plaintiff, in October 1986, fixed the *43 principal due at the sum of $15,550.12. More importantly, for present purposes, the court held that no explicit agreement existed between the parties to pay interest at 1 Vi% per month (i.e., 18% simple interest per annum) and that no implied in fact agreement to pay such interest could be made out on the facts presented. Hence, the court concluded, the 9% statutory rate of interest should be applied to the principal (CPLR 5001, 5004). The court reaffirmed its decision of July 18, 1991 in a decision of October 3, 1991.
The Appellate Division, however, concluded that a trial was warranted "because issues of fact remain as to whether the parties agreed to interest and finance charges in their contract” noting that "Plaintiff * * * submitted evidence of an agreement to pay interest charges and of the charging of interest and finance charges since May 1985.” (Rourke v Thomas Assocs., 189 AD2d 1015, 1016.) The Court alluded to the bills which had been submitted by the plaintiff which, as we have seen, included various undefined finance charges. We note that the bill submitted on March 21, 1985 showed no interest due at that time (decision of Ellison, J., dated Oct. 3, 1991).
At trial, it was conceded by the parties that no express contract or understanding ever existed and that only the bills submitted by plaintiff to defendant contained any reference to interest. Accordingly, the evidence at trial was devoted solely to whether or not an agreement on interest could be inferred from the format and content of the bills presented by plaintiff and the custom of periodic payment by the defendant.
It is the settled law of New York that interest "can be allowed only by virtue of some contract, express or implied, or by virtue of some statute, or on account of the default of a party liable to pay when it is allowed as damages for the default” (Woerz v Schumacher, 161 NY 530, 534). However, the Court of Appeals has made it clear that the general rule is broad enough to recognize that relations between parties to an ongoing business relationship "easily give rise to implied in fact obligations to pay interest” (New York, State Thruway Auth. v Hurd, 25 NY2d 150, 158 [Breitel, J.]).
The case at hand is an example of that hypothesis. Here, the parties were engaged in a business relationship of some 20 years’ duration. There was no lack of mutual understanding between them that some sort of finance charge was being imposed. The defendant, operating a sophisticated professional *44 practice, paid installments on these bills on many occasions without protest or inquiry.
The pattern of payment permits the commercially reasonable inference that carrying charges were anticipated by defendant in order to compensate for its use of plaintiffs money during the oft protracted intervals between the presentation of bills and the payment.
The issue, on this motion to set aside the verdict, is whether or not the jury was justified in concluding that an implied agreement had been created by this custom and practice of billing and payment which required the payment of simple interest at l!á% per month or 18% per annum on unpaid balances from May 1985 to the date of judgment. We conclude that the jurors’ determination that such an implied agreement did exist was not without support in the record and that their conclusion could have been reached on a rational basis.
Finally, we turn to the plaintiffs renewed contention that the interest charged at 1*A% per month should be compounded monthly. At the end of all the evidence, we ruled that the plaintiff had failed to produce evidence from which a jury could conclude that an implied in fact agreement existed which obliged the defendant to pay 1 Vi% interest, compounded monthly, on arrearages of more than 30 days.
The aversion of the common law of England to compound interest has been followed in New York from an early date (see, State of Connecticut v Jackson, 1 Johns Ch 13 [decided in 1814 by Chancellor Kent]; Young v Hill, 67 NY 162, 168, citing Lord Ossulston v Lord Yarmouth, 2 Salk 449 [decided in 1707]). More recently, the Court of Appeals had occasion to reiterate the public policy of New York which discourages creditors from silently permitting the progressive accumulation of liabilities, by way of compound interest, at the expense of debtors who may be unaware of the consequences (Giventer v Arnow, 37 NY2d 305, 308; see also, 72 NY Jur 2d, Interest and Usury, § 12).
That entrenched policy of disapprobation has been modified, over time, by cases permitting an express or even an implied agreement to pay interest upon such interest as had accrued in the past (Newburger-Morris Co. v Talcott, 219 NY 505, 510-511; see also, Gold, New York Approves Law Legalizing Compound Interest, 62 NY St BJ 26 [Oct. 1990] [which traces the evolution of the restrictive New York rule]).
*45 Absent an express agreement, however, we conclude that the public policy which animates the New York rule is not satisfied unless the facts, from which an implied agreement might flow, are sufficiently clear that a debtor of reasonable business acumen would have understood the exponential nature of the interest obligation being generated (Giventer v Arnow, supra, at 308).
The evidence at trial, regarding the accounting methodology which the plaintiff contends he used to compute interest upon interest, gave the defendant no inkling of the plaintiff’s compounding of interest on a monthly basis. As noted above, the bills submitted to defendant occasionally disclosed the presence of a “finance charge” but the indicated percentage of interest ranged from a low 1% to a high of 15% with instances of almost every other intervening percentage. Plaintiff conceded that, on several occasions, no interest at all was charged and that, sometimes, the grace period of 30 days was not applied. He conceded that, sometimes, the period was more or less than 30 days and that, sometimes, the amount in arrears was rounded up or down to the nearest one half of one percentage.
Despite this lack of definition, the evidence could be interpreted to show that the aggregate amount attributed to “finance charges” approximated simple annual interest of 18% and that the defendant acquiesced by periodic payments, thus creating an implied agreement. However, no such correlation was shown between the finance charges submitted to defendant and interest at llá% per month, compounded on a monthly basis. No agreement to pay interest compounded monthly could have been implied, on these facts, and no such theory was submitted to the jury.
We note that the restrictive rule was modified by the Legislature in 1989 with the adoption of section 5-527 of the General Obligations Law, but only in respect to loans exceeding $250,000. Here, the amount at issue does not exceed the statutory threshold. Hence, the restrictive rule remains operative in this case. The narrow scope of the new legislation (e.g., mortgages on owner-occupied one- or two-family residences also are excluded) clearly demonstrates that the level of distaste for compound interest, at least as applied to small business and consumer agreements, remains high. The circumstances present in this case lend credence to the view that the old rule retains a remnant of good sense.
*46 The judgment should incorporate the verdict in favor of the plaintiff in the principal sum of $15,550.12, increased by 18% simple interest per annum from 30 days after March 21, 1985 to the date of entry of the judgment and thereafter at the rate of 9% until the judgment is satisfied (CPLR 5004; Siegel, NY Prac § 412, at 627, 1993 Pocket Part, at 53-54 [2d ed]; Marine Mgt. v Seco Mgt, 176 AD2d 252, 253 [holding that the contract rate of interest governs until the contract is merged in a judgment]). The judgment, of course, should reduce the amount due by the sum of any payments made by defendant after December 1986.