276 F.3d 123 (2nd Cir. 2002)
 IN RE MID-ISLAND HOSPITAL, INC., DEBTOR.
MID-ISLAND HOSPITAL, INC. AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MID-ISLAND HOSPITAL, INC., PLAINTIFFS-APPELLANTS,
v.
EMPIRE BLUE CROSS AND BLUE SHIELD, DEFENDANT-APPELLEE.
 Docket No. 00-5076
August Term, 2000
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: June 1, 2001
Decided January 15, 2002
 
 Appeal from a grant of summary judgment. AFFIRMED. Chief Judge Walker concurs in a separate opinion.[Copyrighted Material Omitted][Copyrighted Material Omitted]
 Ronald M. Terenzi, Berkman, Henoch, Peterson & Peddy, P.C. (Cara M. Goodstein, on the brief), Garden City, Ny, for Plaintiffs-Appellants.
 Howard S. Wolfson, Morrison Cohen Singer & Weinstein, Llp ( John P. McNicholas and Andrew P. Schriever on the brief), New York, Ny, for Defendants-Appellees.
 Before: Walker, Chief Judge, Calabresi and Pooler, Circuit Judges.
 Pooler, Circuit Judge.
 
 
 1
 This appeal requires us once more to address the meaning of "property of the estate"as it is used in the Bankruptcy Code. Plaintiffs Mid-Island Hospital, Inc. (the "Hospital") and Official Committee of Unsecured Creditors of Mid-Island Hospital, Inc. (the "Committee") (collectively, "Mid-Island") claim that because funds that state regulation required Empire Blue Cross and Blue Shield ("Empire") to withhold from payments otherwise due to the Hospital are property of the Hospital's estate in bankruptcy, Empire is obligated to pay interest on the withheld funds to the estate. We agree that the Hospital had a limited, contingent interest in the withheld funds when it filed its petition for reorganization. However, we find that Empire had no obligation to pay Mid-Island interest or invest the funds for Mid-Island's benefit and therefore affirm the district court's judgment dismissing Mid-Island's adversary complaint.
 
 BACKGROUND
 
 2
 New York law requires hospitals to make payments into various pools that the State uses, among other things, to fund excess liability insurance for physicians and dentists who provide emergency care. See, e.g., 1986 N.Y. Laws ch. 266 § 18(1), 4(b), (5).[1]
 
 
 3
 State regulations require insurers to withhold 10% of the moneys due to a hospital that becomes delinquent on its obligation to the pools. The excess liability regulation provides:
 
 
 4
 If any hospital shall fail to timely submit checks [to the excess liability pool] in accordance with this section, the hospital shall have 30 days from date of receipt of notification to provide the required checks. Failure to submit the checks within this 30-day time period shall result in the withholding of 10 percent of the hospital's payments from all major third-party payors regulated pursuant to Subpart 86-1 of this Title until such time as the required checks are received by the pool administrator.
 
 
 5
 10 N.Y. Comp. Codes R. & Regs. § 91.4(i).
 
 
 6
 The Hospital eventually defaulted on its obligations to the state pools, and, in 1989, the State directed Empire to withhold 10% of all payments due and owing to the Hospital. As of January 1998, Empire had withheld $4.5 million in payments that it otherwise would have made to the Hospital.
 
 
 7
 On June 20, 1997, the Hospital filed a voluntary Chapter 11 petition. Approximately six weeks later the Hospital, the Committee, the Trustee, and Empire entered into a stipulation that, among other things, provided that Empire would continue to withhold 10% of the moneys otherwise due to the Hospital unless and until the Hospital obtained an order from the bankruptcy court establishing that Empire could no longer withhold those funds. In October 1997, at the behest of the state, Empire released approximately $135,000 to the Hospital to enable it to meet payroll obligations.
 
 
 8
 That same month the Hospital sought an order directing that Empire turn over all the withheld funds together with an accounting for these funds to the Hospital's attorneys. On November 24, 1997, the Hospital, Committee, Trustee, and State stipulated that the State would direct Empire to pay over $4.5 million to the Hospital's attorneys to be held in an interest-bearing escrow account or invested in a manner acceptable to the Trustee. In January 1998, shortly after bankruptcy court approved the stipulation, the Hospital's attorneys demanded that Empire promptly pay them "approximate[ly] $4,500,000.00 [and make] a date of deposit accounting of all withheld funds." On January 23, 1998, Empire wire transferred $4,379,597.52 to the Hospital to be held in escrow.[2]
 
 
 9
 In October 1998, Mid-Island commenced this adversary proceeding to recover interest (or other profits) arising from the withheld funds. Mid-Island claimed that the interest was either property of the debtor or profits from property of the debtor subject to turnover pursuant to 11 U.S.C. § 543. In addition, Mid-Island asserted a right to interest on state law grounds including unjust enrichment, breach of fiduciary duty, and negligence. In November, the Committee, the Hospital, and the State agreed that $2,222,000 of the withholdings would be paid to the State in satisfaction of all of its pre-petition claims. Mid-Island calculates the value of the interest owing to the estate at between $1.5 million and $2.3 million.
 
 
 10
 In February 1999, Empire made a motion requesting that bankruptcy court either abstain from hearing Mid-Island's claims or grant Empire summary judgment on those claims. Bankruptcy Judge Holland granted Empire's motion for summary judgment in an order signed April 27, 1999. In an oral decision, Judge Holland explained that
 
 
 11
 I do not see that the debtor has made out a prima facie entitlement to interest without an existing obligation to pay and a demand that was properly made that hadn't been complied with. Or in the alternative, which I don't think is at issue here, either a statute or a contract that requires the payment of interest.
 
 
 12
 In response to a question from counsel about unjust enrichment, the court said, "It's enrichment, but it's not unjust."
 
 
 13
 On appeal, the district court (Spatt, J.) affirmed. In re Mid-Island Hosp., 254 B.R. 71 (E.D.N.Y. 2000). Judge Spatt found that the withheld funds were not property of the estate in bankruptcy because the Hospital was not entitled to them as of the date it filed its petition. Id. at 75. Building on this premise, he then concluded that any interest or profits from the withheld funds did not belong to the estate. Id. at 76. The district court also found that Mid-Island could not sustain its claims for unjust enrichment, breach of fiduciary duty, and negligence. Id. at 76-77.
 
 
 14
 This appeal followed.
 
 DISCUSSION
 
 15
 Mid-Island contends that it is entitled to interest (or lost profits) on the withheld funds either because those funds were property of the estate or because Empire had an obligation under a variety of state law theories to invest them for the benefit of Mid-Island.
 
 
 16
 I. Mid-Island's Interest in the Withheld Funds
 
 
 17
 We review de novo the district court's determination that a given item is or is not property of the estate. See In re Renshaw, 222 F.3d 82, 86 (2d Cir. 2000). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This definition is broad and includes even strictly contingent interests. Brown v. Dellinger (In re Brown), 734 F.2d 119, 123 (2d Cir. 1984). The existence of a property interest is determined by state law. Butner v. United States, 440 U.S. 48, 55 (1979).
 
 
 18
 Mid-Island's right to the withheld funds flowed from Empire's agreement with its subscribers to pay providers for services, but New York law modified Mid-Island's rights under those contracts. Although Mid-Island ordinarily had a right to payment from Empire after it provided services to an Empire insured, Section 91.4(i) defeated this contractual right if Mid-Island failed to make its required payments to the State. This unusual blend of contractual and regulatory rights and obligations frames the debate between Mid-Island and Empire.[3]
 
 
 19
 As of the date Mid-Island filed its reorganization petition, its right to the withheld funds was contingent on satisfying its obligation to the excess liability pool. Not having made the required payments, Mid-Island had no current possessory interest in the funds when it filed its reorganization petition. N.Y. Comp. Codes R. & Reg., tit. 10 § 91.4(i); see also In re Nemko, Inc., 143 B.R. 980, 987 (Bankr. E.D.N.Y. 1992) ("The filing of a petition in bankruptcy does not confer upon the Debtor a right to be paid sooner than it would under the terms of the Contract."). However, the Hospital's "speculative" and "intangible" interest in the funds, which was contingent on the satisfaction of its obligations to the State, was property of the estate. See In re Prudential Lines, Inc., 928 F.2d 565, 572 (2d Cir. 1991) (holding that contingent interest in carrying forward net operating loss to offset against future income is property of the estate); In re Neuton, 922 F.2d 1379, 1382-83 (9th Cir. 1990) (holding that debtor's interest in trust income, which was contingent on surviving primary beneficiary, was estate property).[4]
 
 
 20
 Finding that the estate had a contingent interest in the withheld funds does not end our inquiry; we must still determine whether Mid-Island's contingent interest gave it a right to profits from or interest on the withheld funds accruing during the period Empire held them. Mid-Island claims a right to profits or interest from the withheld funds both as "proceeds" or "profits" of property of the estate pursuant to 11 U.S.C. § 541(a)(6) and on a variety of state law theories. However, no separate analysis is required for Section 541(a)(6) because it conveys no greater right than Mid-Island would have under state law. Thus, we look to state law to determine what, if any obligation, Empire had to invest the funds for Mid-Island's benefit or to pay interest on them.
 
 II. New York Law
 
 21
 Pursuant to New York law, an obligation to pay interest is not presumed. See New York State Thruway Auth. v. Hurd, 25 N.Y.2d 150, 158 (1969). In order for one party to owe another interest there must be an express or implied contract, a statutory obligation, or a default on an acknowledged obligation. Id. at 157-58, 303 N.Y.S.2d 51, 250 N.E.2d 335. Although the commercial context of a transaction may "supply the necessary implication of interest," id. at 158, 303 N.Y.S.2d 51, 250 N.E.2d 335, the facts in this case support no such implication. First, the regulation does not provide either that the Hospital must pay interest to the State or that Empire must pay interest to the Hospital. Second, an Empire officer swore that Empire had not paid interest to hospitals in the past when the State directed it to release withheld funds. Third, during the entire time Empire held the funds, the Hospital never demanded that Empire segregate them or place them in an interest-bearing account. Finally, no Hospital officer or employee swore that he believed there was an implicit agreement on Empire's part to pay interest. The summary judgment record supplies no basis from which a finder of fact reasonably could infer that both parties implicitly agreed to the payment of interest on the withheld funds. The withholding regulation does not require the payment of interest. There was no default on Empire's part. Thus, Empire does not owe interest on any contractual theory.
 
 A. Unjust Enrichment
 
 22
 Mid-Island argues that, even absent a contractual obligation to pay interest, it is entitled to recover because Empire was unjustly enriched by its seven-year retention of the Hospital's money. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks omitted). Empire certainly benefitted from the retention of the Hospital's funds; if nothing else, Empire could use this money in lieu of its own funds. And, although Empire argues that its benefit was not at the Hospital's expense, there is some basis in the record for Mid-Island's claim that more funds were withheld than necessary to pay the Hospital's obligation to the State, creating an issue of fact on harm to the Hospital. However, Mid-Island's claim fails on the third prong; it is not against equity and good conscience to retain funds pursuant to a statutory or regulatory mandate. See Marcus v. AT&T Corp., 138 F.3d 46, 64 (2d Cir. 1998).
 
 B. Fiduciary Duty
 
 23
 Mid-Island contends that Empire had a fiduciary responsibility with respect to the withheld funds that required the insurance company to invest the funds or deposit them in an interest bearing account for Mid-Island's benefit. A debtor-creditor relationship is not by itself a fiduciary relationship although the addition of "a relationship of confidence, trust, or superior knowledge or control" may indicate that such a relationship exists. Pan Am. Corp. v. Delta Air Lines, Inc., 175 B.R. 438, 511 (S.D.N.Y. 1994) (internal quotation marks and citation omitted). "[W]hen parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." Id. (internal quotation marks omitted). Here, there is no allegation of anything other than an ordinary commercial relationship. In addition, although Empire had control of funds in which the Hospital had an equitable interest, Empire's control stemmed directly from a regulation which did not provide for payment of interest.
 
 
 24
 Relying on National Union Fire Insurance Company v. Proskauer Rose Goetz & Mendelsohn, 165 Misc.2d 539 (Sup. New York County 1994), Mid-Island also argues that the insurance company had a duty stemming from its status as a de facto escrow agent. An escrow agreement requires "(a) an agreement as to the subject matter and delivery of the same; (b) a third-party depositary; (c) delivery of the subject matter to a third party conditioned upon the performance of some act or the happening of the event; and (d) relinquishment by the promisor." Id. at 544-45, 634 N.Y.S.2d 609. Empire's retention of the withheld funds did not involve delivery by any of the other parties of funds to Empire. Nor did either the State or the Hospital relinquish anything. Thus, Mid-Island cannot proceed on the theory that Empire acted as its escrow agent.
 
 C. Negligence
 
 25
 Mid-Island finally contends that Empire dealt with the Hospital's money in a negligent fashion. The Hospital and Empire had a relationship that was defined by contract as modified by the withholding regulation. Therefore, Mid-Island cannot sustain a claim against Empire based on negligence unless public policy imposed an additional duty on Empire beyond those imposed by the contract and regulation. See Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 551-52 (1992). Because Mid-Island identifies no such policy, its negligence claim fails.
 
 CONCLUSION
 
 26
 For the reasons discussed, we affirm the judgment of the district court in its entirety.
 
 
 
 Notes:
 
 
 [1]
 Although the 1986 Act was time limited, subsequent legislation carried forward its relevant provisions. See N.Y. Ins. L. § 3436 (McKinney 2001) historical and statutory notes.
 
 
 [2]
 The slightly lower amount is the result of a prior overpayment Empire was allowed to deduct from the withheld funds.
 
 
 [3]
 The concurrence urges that it is unnecessary to decide whether Mid-Island had a property interest in the withheld funds. We do so for two reasons. First, the district court premised its decision on its finding that Mid-Island had no property interest in the withheld funds. Second, we find it difficult to determine whether Mid-Island is entitled to interest without first determining the scope, if any, of its property interest.
 
 
 [4]
 The cases on which Empire relies, In re Guiding Light Corp., 217 B.R. 493 (Bankr. E.D. La. 1998); In re Great South Beach Constr., 145 B.R. 372 (E.D.N.Y. 1992), and In re Pelham Fence Co., 65 B.R. 924 (Bankr. S.D.N.Y. 1986), do not require a contrary result. The Great South Beach and Pelham courts considered, respectively, the current and a prior version of New York Labor Law § 220-b, which then and now authorizes the withholding of funds from payments that otherwise would be due to companies who contract with public entities and are alleged not to have paid their workers in accordance with law. Both courts found that the bankruptcy estate of a debtor contractor did not have a property interest in these funds. In Pelham, this result derived from the fact that "the prepetition debtor had no equity in the funds held by" the state fiscal officer because the liens on the project exceeded the amount withheld and the Department of Labor had issued a final order determining the amount due to laborers on the project. 65 B.R. at 927. In Great South Beach, the court reached the same result although the Commissioner had not issued a final order because the amended statute required that withheld funds be held "for the sole and exclusive benefit of workers employed on said public improvement." 145 B.R. at 374 (quoting N.Y. Labor L. § 220-b(2)(b) and adding emphasis). Great South Beach and Pelham cannot be extended to cover the funds held by Empire because at the time of Mid-Island's filing there had been no final determination of the amounts owed to the State and there is no language in Section 91.4(i) similar to the language in Section 220-b(2)(b). Guiding Light involved allegations of fraud, which are not present here. 217 B.R. at 495.
 
 
 
 27
 Chief Judge WALKER concurs in a separate opinion.
 
 JOHN M. WALKER, JR., Chief Judge, concurring:
 
 28
 I concur with the majority's disposition of this case because I do not believe that the interest on the withheld funds ever was property of the bankruptcy estate. However, my decision in this case rests solely on the majority's analysis of the Hospital's rights to the interest in Part II of the opinion's discussion section. The state law issue of whether the withheld funds themselves are property of the estate, discussed in Part I, need not have been reached in this case because the State chose to settle with Mid-Island and Empire returned the funds.
 
 
 29
 The majority's conclusion that the Hospital's speculative and intangible interest in the withheld funds, which was contingent on the satisfaction of its obligations to the State, was property of the estate is therefore dicta. The precedents on the issue of whether the state withholding regulation modifies a defaulting hospital's equitable claim in the withheld funds under New York law are not self-evident. Until the New York courts clarify this issue, or until we are squarely confronted with facts that require us to decide it, I see no reason why we should render what amounts to an advisory opinion on the subject