In re PELHAM FENCE CO.,
INC., Debtor.

Bankruptcy No. 85 B 20295.

United States Bankruptcy Court,
S.D. New York.

Oct. 10, 1986.

Robert Abrams, Atty. Gen. for State of N.Y., New York City, for Lillian Roberts, Com'r of Labor for State of N.Y.; Adeline Liu, Asst. Atty. Gen., of counsel.

Erwin R. Goldman, New York City, for trustee.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Lilliam Roberts, Commissioner of Labor of the State of New York ("Commissioner"), has moved for a declaratory judgment that she is not barred by the automatic stay imposed under 11 U.S.C. § 362(a) from commencing an action against the New York State Department of Audit and Control ("DAC") to recover a portion of a fund withheld from the debtor by DAC because such fund is not property of this estate within the meaning of 11 U.S.C. § 541. Alternatively, the Commissioner seeks relief from the automatic stay on the ground that this estate has no equity in the fund because its value amounts to approximately $57,000, whereas the liens filed against the fund exceed $600,000.

The trustee in bankruptcy in this Chapter 7 case, which was previously converted from Chapter 11, opposes the Commissioner's motion. However, the trustee has expressly waived his procedural objection that the Commissioner should have commenced an adversary proceeding, as required by Bankruptcy Rule 7001(9), for the declaratory judgment sought. The trustee contends that the fund held by DAC constitutes property of this estate and that the Commissioner lacks standing because the trustee may avoid some of the prior liens against the fund and preserve them for the benefit of the estate in accordance with 11 U.S.C. § 551.

## STIPULATED FACTS

1. On June 13, 1985, the debtor, Pelham Fence Co., Inc., filed with this court its petition for relief under Chapter 11 of the Bankruptcy Code. On May 6, 1986, the case was converted for liquidation under Chapter 7. The trustee in bankruptcy was then appointed and qualified to administer this estate.

2. On March 21, 1983, the debtor, which was then in the construction business, entered into a public work contract with the New York State Department of Transportation to improve a portion of Grand Central Parkway in Queens County, New York. The debtor's contract was subject to N.Y. Lab. Law § 220 which required the debtor to pay workers employed in connection with the contract the prevailing rate of wages and supplements set by the Commissioner.

3. George Stratton, one of the debtor's employees on this contract, complained to the New York State Department of Labor that the debtor had not paid him the prevailing wage supplements for the period from July 27, 1983 through February 24, 1984.

4. On July 11, 1984, the New York Department of Labor sent a "Notice to Department of Jurisdiction to Withhold Payment" in accordance with N.Y.Lab. Law § 220–b(2),[1] directing DAC, the custodian of the debtor's contract funds, to withhold $4,032.40 from payment to the debtor. This sum represented an amount preliminarily determined by the New York State Department of Labor to be the amount of wage supplement and underpayments and interest due George Stratton, together with

---

1. § 220–b–(2) reads as follows:

2. When any interested person shall file a written complaint with the fiscal officer, as herein defined, alleging unpaid wages or supplements due for labor performed on a public improvement for which a contract has been entered into, and said labor is alleged to have been performed within the three-year period immediately preceding the date of the filing of said complaint, or if, on the fiscal officer's own initiative, unpaid wages or supplements appear to be due, the fiscal officer shall immediately so notify the financial officer of the civil division interested, who shall withhold from any payment on account thereof, due the contractor or subcontractor executing said public improvement, sufficient moneys to satisfy said wages and supplements, including interest at the rate provided herein, and any civil penalty that may be assessed as provided herein, pending a final determination. The fiscal officer shall then cause an investigation to be made to determine whether any amounts are due to the laborers, workmen or mechanics, or on their respective behalves, on such public improvement, for labor performed after the commencement of the three-year period immediately preceding the filing of the complaint or the commencement of the investigation on his own initiative, as the case may be, and shall order a hearing thereon at a time and place to be specified and shall give notice thereof, together with a copy of such complaint, or a statement of the facts disclosed upon such investigation, which notice shall be served personally or by mail on all interested persons, including the person complained against and upon the financial officer of the civil division interested; such person complained against shall have an opportunity to be heard in respect to the matters complained of, at the time and place specified in such notice, which time shall be not less than five days from the service of said notice. The fiscal officer in such an investigation shall be deemed to be acting in a judicial capacity and shall have the rights to issue subpoenas, administer oaths and examine witnesses. The enforcement of a subpoena issued under this section shall be regulated by the civil practice law and rules. Such investigation and hearing shall be expeditiously conducted, and upon such hearing and investigation, the fiscal officer shall determine the issues raised thereon and shall make and file an order in his office stating such determination and forthwith serve a copy of such order, either personally or by mail, together with notice of filing, upon the financial officer of the civil division interested, and the parties to such proceedings and, if the fiscal officer be the comptroller or other analogous officer of a city, upon the industrial commissioner. Such order shall direct payment of wages or supplements found to be due, including interest at the rate of interest then in effect as prescribed by the superintendent of banks pursuant to section fourteen-a of the banking law per annum from the date of the underpayment to the date of the payment.

In addition to directing payment of wages or supplements including interest found to be due, the order of the fiscal officer may direct payment of a further sum as a civil penalty in an amount not exceeding twenty-five percent of the total amount found to be due. In assessing the amount of the penalty, due consideration shall be given to the size of the employer's business, the good faith of the employer, the gravity of the violation, the history of previous violations and the failure to comply with recordkeeping or other non-wage requirements.

Upon the entry and service of such order, the financial officer of the civil division interested shall pay to the claimant, from the moneys due to the contractor or subcontractor, the amount of the claim as determined by the fiscal officer and the amount of the civil penalty, if any, shall be paid as provided herein, provided that no proceeding pursuant to article seventy-eight of the civil practice law and rules for review of said order is commenced by any party aggrieved thereby within thirty days from the date said order was filed in the office of the fiscal officer. Said appeal shall be directly to the appellate division of the supreme court. Where the fiscal officer is the commissioner, the civil penalty shall be paid to the commissioner for deposit in the state treasury; where the fiscal officer is a city comptroller or other analogous officer, the penalty shall be paid to said officer for deposit in the city treasury. In the event that such a proceeding for review is instituted, moneys sufficient to satisfy the claim and civil penalty shall be set aside by the financial officer interested, subject to the order of the court.

a civil penalty in favor of the New York Department of Labor.

5. DAC acknowledged receipt of the July Notice to Withhold on July 17, 1984 and withheld $4032.40 from the debtor's contract funds to satisfy the wage supplement underpayment and civil penalty.

6. On April 11, 1985, a hearing was held pursuant to Section 220 of the New York Labor Law. The hearing officer issued a Report and Recommendation dated April 30, 1984 recommending that the Commissioner find that the debtor had willfully violated the prevailing wage law and ordered DAC to pay $2932.65 in prevailing wage supplements, plus 10% interest per annum from February 24, 1984 to date of payment to Stratton as well as $293.27 as a civil penalty, to the Commissioner out of the funds previously withheld pursuant to the July Notice to Withhold.

7. On May 6, 1985, the Commissioner issued an order adopting the recommendation of the hearing officer.

8. On June 11, 1985, the Commissioner informed DAC that the statute of limitations had expired for the debtor to commence a proceeding pursuant to N.Y. Lab.Law § 220–b(2) for review of the Commissioner's order and determination. Accordingly, the Commissioner requested that DAC issue a check to Stratton for the amount due plus interest, and a check to the Commissioner for the amount of the civil penalty.

9. Two days later, on June 13, 1985, the debtor filed with this court its petition for reorganizational relief under Chapter 11 of the Bankruptcy Code.

10. By letter dated June 18, 1985, DAC informed the Commissioner that it would not release the withheld funds "until our lien docket is cleared of all claims made against this project."

11. The total amount of lien claims against the DAC funds held in connection with the debtor's contract is approximately $600,000. The amount of funds held by DAC with respect to the debtor's contract is approximately $57,000, inclusive of the sums due to George Stratton and the Commissioner.

## DISCUSSION

Any consideration as to a debtor's right to a prepetition property held by a third party based on the theory that such property constitutes property of the estate within the meaning of 11 U.S.C. § 541 must start with the Supreme Court's decision in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). There it was held that a turnover order pursuant to 11 U.S.C. § 542(a) could issue against the Internal Revenue Service ("IRS") for the seizure of the debtor's property prior to the filing of the debtor's petition for reorganization because "the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization." *United States v. Whiting Pools, Inc.,* 462 U.S. at 209, 103 S.Ct. at 2315. The debtor's right to obtain a turnover from the IRS was not unconditional; it was subject to the duty to provide adequate protection to the IRS as a secured creditor.

When property seized prior to the filing of a petition is drawn into the Chapter 11 reorganization estate, the Service's tax lien is not dissolved; nor is its status as a secured creditor destroyed; The IRS under § 363(e), remains entitled to adequate protection for its interests to other rights enjoyed by secured creditors, and to the specific privileges accorded tax collectors. Section 542(a) simply requires the Service to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to reorganize.

*United States v. Whiting Pools, Inc.,* 462 U.S. at 211–12, 103 S.Ct. at 2317.

Certain distinguishing features are readily apparent in this case. DAC, the custodian of the funds did not obtain them from the debtor's estate as did the IRS in *Whiting Pools, Inc.* These were funds originally due to the debtor for contract work

performed by the debtor. DAC owes the money to the debtor and holds the funds as a stakeholder. DAC is not a creditor of this estate for purposes of claiming adequate protection. The Commissioner is a third party who does not have custody of the funds which are said to be property of this estate, but seeks to enforce a lien against the funds held by DAC, the custodian of the funds. DAC is not a party to this controversy. Moreover, this is a Chapter 7 liquidation case and no effective reorganization is contemplated which would involve property "that the trustee may use, sell or lease" as expressed in 11 U.S.C. § 542(a). Additionally, the property which the IRS seized in the *Whiting Pools, Inc.* case had a going concern value of $162,876, whereas the debtor owed taxes of approximately $92,000, leaving an equity for the debtor's estate of approximately $70,876. In this case the prepetition debtor had no equity in the funds held by DAC in the amount of $57,000 because these funds were subject to liens in excess of $600,000. That the trustee in bankruptcy may create an interest superior to the Commissioner's lien by avoiding other senior liens and preserving them for the benefit of the estate pursuant to 11 U.S.C. § 551 does not detract from the fact that the prepetition debtor had no equity in the funds held by DAC when this case was commenced. Indeed, the trustee has not set forth any grounds that would entitle him to avoid any other senior liens.

Unlike the situation in *In re Whiting Pools, Inc.*, where prepetition property of the debtor was seized for the payment of taxes, this case is more analagous to those cases where prepetition funds were segregated and held in trust for the payment of taxes and are not regarded as the property of the debtor because the holding of the funds in escrow was deemed the equivalent of payment. *In re Rohar Associates, Inc.*, 375 F.Supp. 637 (S.D.N.Y.1974); *Pereira v. United States (In re Rodriguez)*, 50 B.R. 576, 581 (Bankr.E.D.N.Y.1985); *Gerling v. United States (In re D'Aiuto)*, 48 B.R. 451 (Bankr.N.D.N.Y.1985); *Razorback Ready-Mix Concrete Co. v. United States (In re*

*Razorback Ready Mix Concrete Co.)*, 45 B.R. 917, 922 (Bankr.E.D.Ark.1984). In the *Gerling* case, involving the sale of a restaurant, the proceeds of sale were to be held in escrow by the vendor's attorney. A notice of tax levy was thereafter served on the escrow agent in connection with a federal income tax assessment. Subsequently, the vendor filed a petition under Chapter 7 of the Bankruptcy Code. The trustee in bankruptcy commenced an adversary proceeding against the IRS and the escrow agent, alleging that the escrow funds were property of the estate to be administered by the trustee in the bankruptcy case. The court held that the escrow funds never became property of the estate.

However, there is to be considered the fact that the contract of sale in the case at bar did not provide for any money to be paid to the seller, the Debtor in this case. The money was segregated immediately for the payment of taxes and was delivered not to the seller but to the buyer's agent in escrow, to be divided amongst the taxing authorities in accordance with their priority interests. This fact alone may be sufficient for a finding that the property in question never became a part of the bankruptcy estate since it was all completed prior to the filing of the petition and the Debtor had no possessory or beneficial interest in the money.

*Gerling v. United States (In re D'Aiuto)*, 48 B.R. at 453.

In the instant case, Section 220–b(2) of the New York Labor Law directs DAC to set aside specific funds owed to the debtor on a public improvement project and to pay the withheld funds to the Commissioner and to those employees who are entitled to receive underpaid wage supplements from the debtor. Any such funds which are subject to a Section 220–b(2) withholding order, followed by a final "Notice to Release Withheld Money" duly issued by the Commissioner before the filing of a bankruptcy petition by the employer, cannot be regarded as property of the employer or funds which the employer was entitled to

use or possess. The subsequent commencement of a bankruptcy case by or against the employer should not enhance or elevate the rights of the employer-debtor or those of the employer's trustee in bankruptcy with respect to the withheld funds.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties in this case in accordance with 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G).

2. The withheld funds covered by the Commissioner's "Notice to Release Withheld Money," dated July 11, 1984, do not constitute property of this estate within the meaning of 11 U.S.C. § 541 and are not subject to the automatic stay imposed under 11 U.S.C. § 362.

3. The Commissioner's motion for relief in accordance with the foregoing conclusion is granted.

SETTLE ORDER on notice.