**In re SLUGGO'S CHICAGO STYLE, INC., Debtor.**

**Harold S. TAXEL, Trustee, Plaintiff/Appellee,**

**v.**

**CALIFORNIA STATE BOARD OF EQUALIZATION, Defendant/Appellant.**

**BAP No. SC 87–1668 VAJ. Bankruptcy No. 84–05101–M7. Adv. No. C86–0705–M7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 18, 1987.

Decided Dec. 9, 1988.

Herbert A. Levin, Deputy Atty. Gen., Los Angeles, Cal., for defendant/appellant.

Stephen K. Haynes, Hill & Baskin, San Diego, Cal., for plaintiff/appellee.

Before VOLINN, ASHLAND and JONES, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### FACTS

The debtor, prior to bankruptcy (initiated by a Chapter 11 petition, subsequently converted to Chapter 7), was obligated to appellant, State Board of Equalization (Board), for unpaid sales and use taxes. Pursuant to statute, the Board required that the debtor, as a condition of doing business, provide security in the sum of $9,100 which would be available for application to taxes which might be unpaid in the event the debtor closed its business. The security was provided in the form of a bank certificate of deposit, acknowledging deposit by the debtor on April 9, 1984, payable to and placed in the possession of the Board prior to bankruptcy. Thereafter, on November 26, 1984, a Chapter 11 proceeding was instituted by the debtor. The debtor, on that date, according to appellant's priori-

ty tax claim, owed the state $5,334.10. The case was converted from a Chapter 11 to a Chapter 7 proceeding on August 19, 1986.

It was stipulated by the parties, in the course of oral argument before this panel, that the debtor in possession during the period of its Chapter 11 operation, some twenty-two months, did not pay sales and use taxes. Further, the unpaid taxes accruing during the Chapter 11 administration exceeded the $9,100 certificate of deposit.

The debtor ceased its operations and discontinued its business on February 28, 1986, some six months before conversion to Chapter 7. The Board presented the certificate of deposit and the depository bank paid it the sum of $9,016.02 on or about August 1, 1986, some nineteen days prior to conversion from Chapter 11 to Chapter 7.

## ISSUES

The trustee, appellee herein, concedes the perfection of the bank's security interest in the certificate of deposit. However, he contends that the Board, by cashing the certificate, violated the automatic stay of 11 U.S.C. § 362; additionally, the funds should be returned to the trustee subject to distribution pursuant to 11 U.S.C. § 724(b), which renders the Board a priority, rather than a secured, claimant.

The Board contends that the deposit was in the nature of a trust fund wherein the estate has no interest by virtue of 11 U.S.C. § 541(d); and, further, that (1) the debtor in possession as a fiduciary and trustee should be held to its duty to have paid the taxes during the administration of the Chapter 11 estate and (2) the deposited funds were security for the estate to fulfill this obligation. The Board also claims that the accrued taxes which were not paid during the administration of the estate are themselves expenses of administration based on the state's post-bankruptcy claim and, therefore, not subject to the subordinate priority level set by section 724(b), which is applicable to prebankruptcy claims.

The court below ruled that, while the Board held a security interest, the funds represented by the certificate of deposit were property of the bankruptcy estate; thus, in presenting the certificate of deposit to the bank for payment, the Board violated the automatic stay. The trustee was held entitled to the proceeds of the certificate, and the Board was required to return $9,100 plus interest to the estate subject to distribution pursuant to section 724(b) of the Bankruptcy Code.

## STANDARD OF REVIEW

This matter was decided on the basis of the trustee's motion for summary judgment and the Board's cross-motion for summary judgment. The trustee's motion was granted and the cross-motion denied. The bankruptcy court's granting of a summary judgment is a determination as a matter of law and is therefore reviewed *de novo*. *In re Bullion Reserve of North America*, 836 F.2d 1214, 1216 (9th Cir.1988), *cert. denied,* —— U.S. ——, 108 S.Ct. 2824, 100 L.Ed.2d 925; *In re Stephens*, 51 B.R. 591, 595 (9th Cir. BAP 1985).

## DISCUSSION

I. The Nature of the Certificate of Deposit

A bankruptcy estate can include property on which taxing authorities have a lien. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 206–07, 103 S.Ct. 2309, 2314–15, 76 L.Ed.2d 515 (1983). In contrast, a bankruptcy estate ordinarily does not include monies held in trust for a creditor or third party. *Selby v. Ford Motor Co.*, 590 F.2d 642, 645 (6th Cir.1979).

The threshold question, therefore, is whether the certificate of deposit became part of the bankruptcy estate. If not, the automatic stay did not apply. *See In re Fresh Approach, Inc.*, 51 B.R. 412, 423 (Bankr.N.D.Tex.1985); *In re Tinnell Traffic Servs., Inc.*, 43 B.R. 277, 278 (Bankr.M.D.Tenn.1984).

Courts are to resolve the questions of whether a debtor has interest in a given asset by reference to state, non-bankruptcy

law. *In re Farmers Mkts., Inc.*, 792 F.2d 1400, 1402 (9th Cir.1986); *see also In re Petite Auberge Village, Inc.*, 650 F.2d 192 (9th Cir.1981).

The following two California statutes create Board rights in property of a delinquent taxpayer:

Cal.Rev. & Tax.Code § 6701, providing: (1) The Board, whenever it deems it necessary to ensure compliance with this part (Cal.Rev. & Tax.Code §§ 6001–7176) may require any person subject thereto, to place with it such *security* as the Board may determine (emphasis supplied); and

Cal.Rev. & Tax.Code § 6815, providing: (2) *If at the time a business is discontinued* the board holds *security* pursuant to Section 6701 in the form of cash, government bonds, or insured deposits in banks or savings and loan institutions, such security *when* applied to the account of the taxpayers shall be deemed to be a payment on account of any liability of the taxpayer to the board *on the date the business is discontinued.* (Emphasis supplied.)

The parties in a Stipulation of Facts submitted to the trial court stated, *inter alia:*

1. On April 9, 1984, Sluggos Chicago Style, Inc. (the debtor) placed with the Board *security* as required by Cal.Rev. & Tax.Code § 6701, in the form of a certificate of deposit payable to the Board in the sum of $9,100. A copy of the certificate of deposit is attached as exhibit A hereto. (Emphasis supplied.)

The Board contends that despite the statutory and stipulated terminology relating to security, the deposit was a trust fund; because the security had been subjected to the exclusive control of the state, the property was held in trust and not part of the bankruptcy estate as provided for by 11 U.S.C. § 541(d). That section includes in the estate "property in which the debtor holds, as of the commencement of the case, only legal title ... but not to the extent of any equitable interest in such property that the debtor does not hold."

The Board heavily relies on *Selby,* and further cites cases such as *In re Pelham Fence Co., Inc.*, 65 B.R. 924 (Bankr.S.D.N.Y.1986); *In re Marona,* 54 B.R. 65 (Bankr. N.D.Ala.1985); and *In re Lenk,* 48 B.R. 867 (W.D.Wis.1985). The foregoing cases are distinguishable.

*Selby* involved a state statute which designated funds of a third party, that is the builder's contruction fund, as a trust fund. The statute was entitled "Michigan Builder's Trust Fund Act." The statute provided as follows:

In the building construction industry, the building contract fund paid by any person to a contractor ... shall be considered by this Act to be a trust fund for the benefit of (1) the person making the payment and (2) contractors, laborers, subcontractors or materialmen, and the contractor ... shall be considered the trustee of all the funds so paid to him for building construction purposes.

The trustee in bankruptcy in *Selby* sought to set aside payments to the subcontractors as preferential transfers. The court held that the funds, which were literally subject to a statutory trust, never came into the hands of the estate, and that the trustee could not regain these funds by way of preference actions against the subcontractors.

The *Marona* and *Lenk* cases involved funds which had been deposited with the state by uninsured motorists. In both cases, judgments had been entered and attached to the funds. In *Pelham Fence,* the debtor was a contractor who had engaged in a public works contract from which funds were held to pay employees of the contractor. The court, without citing *Selby,* stated that this was a case where prepetition funds were segregated and held in trust for the benefit of certain parties concluding:

The subsequent commencement of a bankruptcy case by or against the employer should not enhance or elevate the rights of the employer-debtor or those of the employer's trustee in bankruptcy with respect to the withheld funds.

*Pelham Fence,* 65 B.R. at 928. This case, therefore, supports the argument of appel-

lee rather than that of the appellant. *Lenk* might be read the Board's way, but involved a judgment which, although questionable, the District Court found on appeal to have appropriately attached to the deposit.

II. Applicability of the Certificate of Deposit for Payment of the Post–Bankruptcy Taxes

A.

■ It was stipulated by the parties, as indicated, that the unpaid post-bankruptcy tax debt exceeded the funds held by the certificate of deposit. The trustee contends that the state was negligent in not monitoring the payment of taxes (or nonpayment thereof) by the debtor in possession for a period of nearly two years. The state, on the other hand, cites (1) 28 U.S.C. § 959(b), which provides:

> Except as provided in section 1166 of Title 11 [not relevant to this matter], a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof;

and (2) 28 U.S.C. § 960, which provides:

> Any officers and agents conducting any business under authority of a United States court shall be subject to all federal, state and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.

It may also be noted that 11 U.S.C. § 1107 specifies the rights, powers, and duties of a debtor in possession. This section imposes on the debtor in possession the obligations of a trustee serving under Chapter 11 set forth in 11 U.S.C. § 1106(a), which in turn requires the Chapter 11 trustee to perform substantially all the duties specified for a Chapter 7 trustee in 11 U.S.C. § 704. Among these duties are those specified in subsection 8, which states:

> If the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with the responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; ...

In this regard, appellant points also to title 28, section 960, above quoted, as specifically requiring the debtor to maintain its pre-bankruptcy tax security while it continued to operate the business.

Viewing the matter from the perspective of hindsight, the debtor's conduct in flouting its obligations under various statutes of the United States, including the specific direction of the Bankruptcy Code, is inexcusable. The question, however, is whether or not the pre-bankruptcy deposit may be considered as having been carried over in that form into the bankruptcy case. This in turn raises an issue as to whether it was necessary for the debtor as a trustee to have requested permission to dedicate a pre-bankruptcy fund in which the debtor had an interest to, or made security for, a post-bankruptcy purpose. Section 363(c)(1) of the Code provides that:

> If the business of the debtor is authorized to be operated under section 721, 1108, ... and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

It is problematical as to what the court would have ordered. However, it is clear that section 6701 of the California Revenue & Tax Code, quoted above, contemplates the Board obtaining security deposits "whenever it deems it necessary to ensure compliance." Requiring security is an en-

forcement procedure following on delinquency in payment of taxes. This sequence of events, delinquency and furnishing of security, is not the ordinary course of business. Moreover, 28 U.S.C. §§ 959(b) and 960 impose on fiduciaries, such as the debtor in possession, a specific and affirmative obligation to comply with state law and pay taxes while operating a business.

In any event, there is nothing in the record to suggest that the Board relied on the security deposit to cover, not only its pre-bankruptcy claim against the debtor, but also any post-bankruptcy claim against the debtor in possession. Although the conduct of the debtor, as debtor in possession, was irresponsible, and the state may ascribe its passivity over a period of almost two years to reliance on the debtor's compliance with the law as well as the deposit, there does not appear to be any impelling legal or equitable reason for transforming the prebankruptcy character of the deposit into a post-bankruptcy security interest or trust.

### B.

■ We note that the drawing down of the deposit was accomplished prior to the termination of Chapter 11 and that, by virtue of 11 U.S.C. § 103, section 724 can only apply in a case under Chapter 7. However, the automatic stay provision of 11 U.S.C. § 362 is applicable in Chapter 11. Section 362(a)(4) stays, generally, "any act to create, perfect, or enforce any lien against property of the estate;" section 362(a)(5) affects in the same manner any lien to the extent "that such lien secures a claim that arose before commencement of the case under this title...." The action of the state in enforcing any portion of its security interest by cashing in the certificate was in violation of the automatic stay.

An action taken in violation of the stay is void. *Kalb v. Feuerstein* 308 U.S. 433, 438, 60 S.Ct. 343, 345, 84 L.Ed. 370 (1940); *In re Wingo*, 89 B.R. 54, 57 (9th Cir. BAP 1988). Because the Board acted in violation of section 362, its action during Chapter 11 (when section 724 presumably did not apply) cannot provide justification for retention of the funds obtained by cashing the certificate of deposit.

As the deposit is an asset of the estate, it would be subject to disposition under section 724(b), which divests or subordinates the security interest of a taxing agency to a sixth level priority unsecured claim pursuant to 11 U.S.C. § 507(a). Even though this treatment may be in derogation of a lawfully acquired lien, such subordination results from long standing policy which antedates the present Bankruptcy Code. *United States v. Randall*, 401 U.S. 513, 517, 91 S.Ct. 991, 994, 28 L.Ed.2d 273 (1971); *In re Tamasha Town & Country Club*, 483 F.2d 1377, 1379 (9th Cir.1973).[1]

### CONCLUSION

The problem of whether or not property is subject to any claim of interest by the bankruptcy estate is long outstanding and frequently litigated. *See Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309; *In re Anchorage Int'l Inn, Inc.*, 718 F.2d 1446 (9th Cir.1983). The question has also been considered extensively under the preference section of the Bankruptcy Code, 11 U.S.C. § 547, when the defense has been tendered that the subject matter of the transfer was not property of the estate. The latter issue was dealt with in cases such as *In re Olympic Foundry Co.*, 63 B.R. 324 (Bankr. W.D.Wash.1986), *rev'd on other grounds*, 71 B.R. 216 (9th Cir. BAP 1987), and *Drabkin v. District of Columbia*, 824 F.2d 1102

---

1. "We think the statutory policy of subordinating taxes to costs and expenses of administration would not be served by creating or enforcing trusts which eat up an estate, leaving little or nothing for creditors and court officers whose goods and services created the assets. In *Nicholas v. United States*, 384 U.S. 678, 690–92, 86 S.Ct. 1674, 1683–84, 16 L.Ed.2d 853 (1966), we rejected the claim of the United States that under section 7501(a) of the Internal Revenue Code it was entitled to interest accruing after the arrangement under chapter XI and during the bankruptcy. We so held because to allow interest would run counter to the 'strong policy of § 64(a)(1) of the Bankruptcy Act'. *Id.*, at 691, 86 S.Ct. at 1684. To allow the present claim priority for the principal would by the same token run counter to the grain of the Bankruptcy Act." *United States v. Randall*, 401 U.S. 513, 517, 91 S.Ct. 991, 994, 28 L.Ed.2d 273 (1971).

(D.C.Cir.1987), both of which reviewed, in depth, legislative history and case law.

Considering the variety and complexity of these cases, the need to review the matter before us in the light of its applicable statutes and facts is apparent. From this perspective, it is clear that the California statutes provide for creation of a security interest, enforceable on the happening of a specified event, cessation of business. On this basis, the Board was a secured creditor for a pre-bankruptcy debt of some $5,000 on the date of bankruptcy when the automatic stay of 11 U.S.C. § 362 intervened. The nature of the Board's interest having been defined on that date, without change thereafter, its claim was subject to the character and priority imposed on it by the Bankruptcy Code.

We conclude that the bankruptcy estate encompassed the funds deposited by way of security and that the court's requirement, that the funds be returned to the estate subject to distribution as provided for by 11 U.S.C. § 724(b), was appropriate. We therefore affirm.