## In re ROUNDWOOD CORPORATION, INC., Debtor.

### Bankruptcy No. 84–01634.

United States Bankruptcy Court, D. South Carolina.

March 31, 1987.

W. Ryan Hovis, Hovis & Duncan, P.A., Rock Hill, S.C., Trustee.

John S. Egan, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., for Borg-Warner.

### MEMORANDUM AND ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

Before the court is the request of Borg-Warner Insurance Finance Corporation

1. Further references to the Bankruptcy Code are

(Borg-Warner) for payment of an administrative expense arising out of a financing agreement relating to the purchase of insurance policies. By the agreement between Borg-Warner and the debtor, Roundwood Corporation (Roundwood), Borg-Warner agreed to finance on January 7, 1985, certain insurance policies on behalf of the debtor which was, on that date, a debtor in possession under chapter 11 of the Bankruptcy Code (11 U.S.C. § 101, *et seq.*).[1] In return for Borg-Warner's payment of Roundwood's insurance premiums in full on January 7, 1985, Roundwood, in addition to other agreements, agreed to make monthly installment payments to Borg-Warner until the amount financed had been repaid.

The chapter 11 case was converted to a case under chapter 7 on October 20, 1985, at which time one payment of $10,311. remained unpaid on the financing agreement. For reasons which will be more fully developed, Borg-Warner maintains that its claim for the final payment due under the financing agreement is an administrative expense incurred in the chapter 7 case and, as such, is entitled to the priority afforded by § 726(b), which provides, in pertinent part, that allowed administrative claims incurred after the conversion of a case from chapter 11 to chapter 7 have priority over allowed administrative claims incurred in the preceding chapter 11 case. While the trustee agrees that Borg-Warner is entitled to treatment of its $10,311. claim as an administrative expense under § 503(b)(1)(A), the trustee asserts that the claim was incurred in the chapter 11 case and not in the chapter 7 case.

### ISSUES

#### I

Whether the claim of Borg-Warner for $10,311. is a § 503(b) administrative expense incurred prior to conversion of the chapter 11 case on October 20, 1985 or whether the claim is a § 503(b) administrative expense incurred after conversion of the case to chapter 7.

by section number only.

## II

In that the trustee seeks compensation for opposing the claim of Borg-Warner, whether the issues herein litigated are the same as those litigated in the motion for relief from stay filed by Borg-Warner on December 2, 1985.

### FACTS

Roundwood filed a petition for relief under chapter 11 of the United States Bankruptcy Code on November 8, 1984. On January 7, 1985, Roundwood entered into an insurance premium finance agreement with Borg-Warner. Under the insurance premium finance agreement, the debtor purchased a number of different insurance policies, one of which was a fire and hazard policy. The total premiums for the insurance policies were $111,439. Roundwood made a down-payment of $23,476. and agreed to pay the balance in nine monthly installments of $10,311. each. The finance agreement gave to Borg-Warner the right to cancel the policies in the event of a default in payment of any installment due under the agreement. The finance agreement also gave to Borg-Warner a security interest in any unearned premiums.

Roundwood paid eight of the nine installments called for by the agreement. The final installment of $10,311., which came due on September 23, 1985, was not paid.

The chapter 11 case was converted to a case under chapter 7 on October 20, 1985. After the conversion, Borg-Warner notified Roundwood that it intended to cancel the fire and hazard insurance coverage because of Roundwood's failure to pay premiums when due. At that time, all other insurance policies financed by Borg-Warner had been cancelled by the trustee. The chapter 7 trustee informed Borg-Warner that its cancellation of the fire and hazard insurance would violate § 362(a)(3). On December 2, 1985, Borg-Warner filed a motion to lift the stay in order to cancel the insurance policy. That motion was denied in a judgment filed with the clerk of court on December 27, 1985. The fire and hazard insurance policy purchased through the financing agreement continued in effect until December 31, 1985 at which time the policy expired by operation of its own terms.

## I

In order to resolve the issues before the court, the language of § 726(b) requires a finding of when the claim of Borg-Warner was "incurred". Section 726(b) reads, in relevant part, as follows:

[E]xcept that in a case that has been converted to this chapter under section 1112 or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion ....

### A

#### *Trustee's Position*

The trustee maintains that the claim of Borg-Warner was "incurred" on September 23, 1985, the date on which the payment of $10,311. came due under the insurance premium finance agreement. (The chapter 11 case was converted to a case under chapter 7 of the Bankruptcy Code on October 20, 1985). It is the position of the trustee that the payment which came due on September 23, 1985 was an installment payment under a financing arrangement. The trustee asserts that the claim was "incurred" at the time it became due and payable, which was during the existence of the chapter 11 case.

### B

#### *Borg-Warner's Position*

On the other hand, Borg-Warner maintains that its claim was "incurred" when the chapter 7 trustee notified Borg-Warner that the automatic stay, specifically § 362(a)(3), precluded Borg-Warner from cancelling the policy. The parties, however, have not stipulated as to the date the trustee gave such notice to Borg-Warner. Borg-Warner argues that, had it been able to cancel the policy, it would have received a direct refund of unearned premiums from the insurance company; therefore, it would

have had no claim for administrative expense. Furthermore, Borg-Warner asserts that the trustee's opposition to the cancellation of the insurance policy resulted in Borg-Warner's providing significant benefits to Roundwood from October 20, 1985 (the date of conversion to chapter 7) until December 31, 1985 (the date the insurance policy expired of its own terms).

## C

### DISCUSSION AND CONCLUSION

The Bankruptcy Code does not define the term "incur". Nor has the court found any cases which discuss the question of when a claim is "incurred" for the purposes of § 726(b). At least the underlying purpose of the section has been made relatively clear. As explained in the legislative history of § 726(b), "[t]hose who must wind up the affairs of a debtor's estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate."[2] The rationale underlying § 726(b) is particularly well stated in the case of *In re Codesco*, 18 B.R. 225, 227, 8 B.C.D. 1089, 1091, 6 C.B.C.2d 395, 398 (Bankr.S.D.N.Y.1982):

> The super-priority status for the so called "burial expenses" after the conversion was intended to provide an incentive to encourage capable trustees and professionals to act in superseding cases. This purpose would be negated if liquidating administrative expenses of an absorbed chapter 11 case could also qualify for super-priority status in a converted chapter 7 case.

As explained by the court in the case of *In re IML Freight., Inc.*, 52 B.R. 124, 135, 13 B.C.D. 374, 382 (Bankr.D.Utah 1985), the

relationship between § 726(b) and § 507(a)(1) is such that all administrative expenses incurred under chapter 11 must be treated equally because these expenses "are on a statutory parity with one another as to right to payment."

Section 726(b) provides that payments on claims specified in paragraphs (1), (2), (3), (4), (5), or (6) of § 507(a) enumerating priority expenses and claims, or claims specified in paragraphs (2), (3), (4) or (5) of § 726(a) shall be made pro rata among claims of the kind specified in a particular paragraph. This requirement that claims within a particular class are to be paid pro rata applies only when there are inadequate funds to pay holders of a particular class in full.

4. *Collier on Bankruptcy* ¶ 726.03, [citations omitted].(15th ed. 1979).[3]

■ Having examined the purpose and requirements of § 726(b), the court now must determine, for the purposes of that section, whether the claim of Borg-Warner was "incurred" during the chapter 11 case or after conversion of the case to chapter 7. We first note that the insurance premium finance agreement was executed on January 7, 1985, a date on which Roundwood was a debtor in possession under chapter 11. In addition, Borg-Warner's claim for $10,311. became due and payable on September 23, 1985, which is another date which falls within the chapter 11 case. Given that the execution date of the finance agreement and the due date on the final installment were within the time when Roundwood operated as a debtor in possession under chapter 11, the court finds that the claim of Borg-Warner is an administrative expense incurred during the chapter 11 case.[4] Accordingly, Borg-Warner's claim

2. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 186–187 (1977); 1978 U.S.Code Cong. & Admin. News, 5787, 6147.

3. As noted in the *Collier Pamphlet Edition of the Bankruptcy Code*, Part I, 1986 at p. 417, "[P]ub.L. No. 98–353 added subsection (a)(5) to section 507 and redesignated subsections (a)(5) and (a)(6) and (a)(7) respectively. In section 726(b), Pub.L. No. 98–353 did not amend the cross-reference to section 507 to reflect the redesignations made in that section."

4. Cases which have decided the analogous question of when a debt is "incurred" pursuant to § 547(c)(2), (an exception to the trustee's power to avoid preferential transfers which was in effect prior to the 1984 enactment of the Bankruptcy Amendments and Federal Judgeship Act, P.L. 98–353, 98 Stat. 333) have provided two lines of authority. In construing an installment loan contract for an automobile pursuant to the now superseded § 547(c)(2)(B), the court in *In re McCormick*, 5 B.R. 726, 732, 6 B.C.D. 889, 892, 2 C.B.C.2d 1145, 1151 (Bankr.N.D.Ohio 1980), held that the "original debt was incurred

for $10,311. will not be afforded priority pursuant to § 726(b) over other administrative expenses incurred during the chapter 11 case.

## II

■ The trustee, seeking compensation for opposing Borg-Warner's claim, states that the issues herein litigated are the same as those litigated in the motion for relief from stay filed by Borg-Warner on December 2, 1985. The court finds that Borg-Warner's motion for relief from stay was denied on a procedural ground, namely, Borg-Warner's failure to file a supporting memorandum as required by Local Rule M–04. Accordingly, the court is of the opinion that the trustee's request for reimbursement of expenses associated with the litigation before the court should be denied.

## ORDER

THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the request of Borg-Warner for treatment of its $10,311. claim as an administrative expense with priority, pursuant to § 726(b), over other administrative expenses incurred in the chapter 11 case is hereby denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the trustee's request for reimbursement of expenses associated with the litigation before the court is denied.

in 1978 when the debtor took possession of the vehicle and assumed the legal obligation to pay on the loan contract." *Accord, Barash v. Public Finance Corp.,* 658 F.2d 504, 509–510 (7th Cir. 1981). However, with regard to commercial real estate leases, the court in *In re Mindy's,* 17 B.R. 177, 179, 5 C.B.C.2d 1451, 1453 (Bankr. S.D.Ohio 1982), refused to adopt the argument that for the purposes of the now superseded § 547(c)(2), "the debt was incurred at the time of the original signing of the lease obligations." Instead, the court in *In re Mindy's, supra,* held that the debt was incurred in increments as the lessee occupied the premises. *Accord, In re White River Corp.,* 799 F.2d 631, 15 C.B.C.2d 617, 620 (10th Cir.1986).