In re Donald MacNEIL and Sharlee MacNeil, Debtors.

**AMERICAN STATE BANK and CIT Financial Services, Inc., Appellants,**

v.

**Thomas G. MARKS, Appellee.**

**BAP No. OR-88-1877-MeJMo.
Bankruptcy No. 386-02740-S7.**

United States Bankruptcy Appellate Panel for the Ninth Circuit.

Argued and Submitted March 16, 1989.

Decided Aug. 11, 1989.

---

John M. Bernam, Beaverton, Or., for appellants.

James C. Waggoner, Portland, Or., for appellee.

Before MEYERS, JONES and MOOREMAN, Bankruptcy Judges.

PER CURIAM:

## I

We are asked to review a decision which gave a superpriority claim arising during the course of a liquidation priority over competing claims which emanated from Section 507(b). We AFFIRM.

## II

### FACTS

Donald E. and Sharlee L. MacNeil ("MacNeils") were in the business of selling and servicing recreational vehicles. They financed their inventory through American State Bank ("ASB") and CIT Financial Services ("CIT"), giving each creditor a blanket security interest in the vehicles they floored. Shortly after filing for reorganization under Chapter 11, the MacNeils sold a vehicle from this inventory for $30,200.00. When CIT subsequently moved for relief from the automatic stay and alternatively for adequate protection, the MacNeils were ordered to place these sale proceeds into a segregated account.

ASB and CIT thereafter entered into a court-approved stipulation with the MacNeils, whereby the three parties agreed that the MacNeils would transfer the sale proceeds from their existing bank account to a new cash collateral account at ASB. No funds were ever deposited, however, for around the time the MacNeils' case was converted to Chapter 7 for purposes of liquidating their estate, both the MacNeils and the money disappeared.

ASB and CIT filed proofs of claim in the converted case and urged the trial court to award them a superpriority administrative claim under Section 507(b) in an amount equal to the absconded funds. They further urged that the superpriorities so established were to be paid ahead of all other administrative claims, including those arising during the course of the liquidation. The newly appointed trustee objected to the request, contending that neither creditor had fulfilled the prerequisites for a superpriority claim and that, even if such prerequisites had been met, that their claims were subordinate to the administrative expenses of the Chapter 7. He urged that paramount priority for Chapter 7 administrative expenses was indispensable because the estate was seeking reimbursement for several alleged preferential transfers and such prosecutions would likely fail if he were unable to secure guarantees of ultimate priority for the attorneys pursuing the matters. According to the trustee, a successful prosecution could result in substantial judgments giving both ASB and CIT, as well as Chapter 7 administrative claimants, full satisfaction.

The trial court bypassed the issue of whether ASB and CIT had indeed acquired valid superpriority claims, holding instead that such claims would be subordinate to Chapter 7 administrative claims in any event. This appeal followed.

## III

### STANDARD OF REVIEW

The issue on appeal is whether superpriority claims arising under Section 726(b) have priority over superpriority claims emanating from Section 507(b). It is a

question of law subject to de novo review. *See In re Windmill Farms, Inc.*, 841 F.2d 1467, 1469 (9th Cir.1988).

## IV
## DISCUSSION

Where competing administrative claims arise through the operation of Sections 507(b) and 726(b) and the assets with which they are to be paid are unlikely to be sufficient to satisfy both, an ultimate priority must be established. Upon careful review of the relevant statutory language and the policies underlying both provisions, we conclude that the post-conversion claims under Section 726(b) must prevail.

Administrative claims incurred under Section 503(b) following the conversion of a reorganization case are entitled to superpriority over like claims incurred prior to conversion. 11 U.S.C. § 726(b).[1] The failure of adequate protection in a reorganization case is plainly an administrative expense of that case and is therefore subject to the payment of any and all administrative expenses which may arise during a superceding liquidation.[2] Claims intended to compensate failed adequate protection are extended priority only over those expenses incurred prior to conversion.

Looking beyond the language of the relevant statutes to the policy underlying Section 726(b), it is evident that the superpriority status for "burial expenses" was intended to encourage capable trustees and other professionals to partake in liquidation to maximize the benefit for those who seek satisfaction of their claims against the estate. *See In re Roundwood Corp., Inc.*, 72 B.R. 296, 299 (Bankr.D.S.C.1987); *In re J.R. Research, Inc,* 65 B.R. 747, 751 (Bankr.D.Utah 1986); *In re Codesco, Inc.*, 18 B.R. 225, 227 (Bankr.S.D.N.Y.1982). By according ultimate priority to claims aris-

ing under Section 726(b), we simply ensure that a liquidation will be carried out consistent with the expressed will of Congress: "[t]hose who must wind up the affairs of a debtor's estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 186–187 (1977); 1978 U.S.Code Cong. & Admin.News, 5787, 6147. If we were to permit the superpriority claims of CIT and ASB, conceding for purposes of argument that they exist at all, to be paid before the administrative claims of those who seek to administer the liquidation of the MacNeils' estate, there would arise an unacceptable risk that the existing actions might never be pursued. Such an occurrence might sharply reduce the overall return to creditors.

We agree with the trial court that the collective estate in a liquidation is composed of more than just the Section 507(b) superpriority creditor. We find, in the words of the trial court, that the trustee has discretion to do the "reasonable thing" and that "the reasonable thing may be to use the war chest provided by the dregs left over [from reorganization] to chase assets that might be available to pay not just the [507(b)] superpriority but the rest of the [claims, as well]."

## V
## CONCLUSION

The language and policies underlying the Bankruptcy Code command that claims accorded priority under Section 726(b) be given ultimate priority over claims emanating from Section· 507(b).

AFFIRMED.

MEYERS, Judge, concurring:

While I fully support the decision of the Panel, I write separately to enlarge on my

---

1. "Administrative expenses" were given priority by Congress relative to other claims to estate· assets because "the estate as a whole is benefitted if general [i.e., unsecured] creditors subordinate their pre-bankruptcy claims in order to secure goods and services necessary to an orderly and economical administration of the estate after the petition is filed." *See* 11 U.S.C. § 503(b); *In re Alchar Hardware Co., Inc.*, 759

F.2d 867, 868–69 (11th Cir.1985); *In re Yermakov,* 718 F.2d 1465, 1470 (9th Cir.1983).

2. Section 507(b) furnishes a superpriority administrative claim to creditors whose adequate protection fails. *See* 11 U.S.C. § 507(b); *In re Center Wholesale, Inc.,* 759 F.2d 1440, 1451 (9th Cir.1985); *Collier on Bankruptcy* ¶ 507.04 at 507–26, ¶ 507.05 at 507–50 (15th ed. 1988).

approach to the issue presented. As with any question of statutory construction, we start with the plain language of the statute. *See U.S. v. Ron Pair Enterprises, Inc.*, —— U.S. ——, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

Reference to the statutes involved reveals that Section 507(b) accords "priority over every other claim available under such subsection" referring to Section 507(a)(1) which gives first priority to administrative claims allowed under Section 503(b). On the other hand, Section 726(b) grants "priority over a claim allowed under Section 503(b) ... incurred under any other chapter of this title." These provisions give no guidance over which is to prevail between these two subsections and the legislative history is likewise devoid of any direction.

Given this dilemna, we must still decide which provision is to be accorded priority. Our goal is to ascertain Congressional intent by giving effect to the language of the statute while preserving its sense and purpose. *See Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *In re Cleveland*, 89 B.R. 69, 71 (9th Cir. BAP 1988).

Here in a most practical sense the purposes of the Code are better served by recognizing that Chapter 7 costs of administration are to be preferred over those incurred in proceedings conducted in other chapters. All interests gain if court officers are assured of being compensated for their efforts in liquidating the estate, with those holding Section 507(b) claims being among the very first to benefit. This is also in accord with the special status provided for Chapter 7 liquidation expenses found in Section 724(b), which surprisingly grants a priority for such expenses over *security interests* held by taxing authorities. *See In re Sluggo's Chicago Style, Inc.*, 94 B.R. 625, 630 (9th Cir. BAP 1988). *See also Nicholas v. United States*, 384 U.S. 678, 690–92, 86 S.Ct. 1674, 1683–84, 16 L.Ed.2d 853 (1966).