**In re HERS COSMETICS CORPORATION, a California corporation, Debtor.**

**Bankruptcy No. SA 86–02272 JR.**

United States Bankruptcy Court, C.D. California.

May 3, 1990.

Stanley Minier of Minier & Winters, Santa Ana, Cal., for administrative creditor.

T. Edward Malpass, Irvine, Cal., for movant.

John P. Stodd, Santa Ana, Cal., trustee.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

The Chapter 7 Trustee, John P. Stodd, ("Trustee") and Minier & Winters ("Minier"), prior counsel to debtor when debtor was in Chapter 11, object to the attorneys fees sought by T. Edward Malpass ("Malpass") for services rendered in defending the administrative claims of Joseph and Ida Marie Lattuga (the "Lattugas") awarded under § 503(b)(3)(D) and § 503(b)(4) of the Bankruptcy Code. I heard the objections on January 23, 1990 and took the matter under submission.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF FACTS

The Chapter 11 petition was filed on April 29, 1986. Trustee was appointed on May 19, 1987 and the case was converted to Chapter 7 on August 31, 1987.

The Lattugas were shareholders, officers, and creditors of debtor from late 1986 through early 1987. From February 1987 to June 1987 the Lattugas performed beneficial services that led to the sale of debtor's assets and net proceeds of $50,000 for the estate. The Lattugas sought reimbursement for their actual, necessary expenses as an administrative claim under § 503(b)(3)(D). After hearing opposition from Trustee, I found that the Lattugas had made a "substantial contribution" to the estate under § 503(b)(3)(D) and, therefore, awarded them $18,163 as an administrative expense.

The Lattugas also sought reimbursement under § 503(b)(4) for their attorneys fees to Malpass. Trustee again opposed the claim. I allowed fees of $16,395 for legal services provided through May, 1987. Trustee filed a Motion for Reconsideration which I denied. On September 15, 1988, Trustee appealed my decision to the Bankruptcy Appellate Panel (the "BAP").

In a memorandum opinion filed August 2, 1989, the BAP affirmed my decision. Trustee persisted by filing a Motion for Rehearing with the BAP. The BAP denied this request and no further appeal of the matter was made.

As previously mentioned, I awarded the Lattugas an administrative claim for Malpass' fees of $16,395 for services rendered in establishing the Lattugas' claim at the trial court level. This dispute involves Malpass' fees of $32,949.16 and expenses of $547.86 for services performed to protect on appeal my award of the Lattugas' administrative claims under § 503(b)(3)(D) and § 503(b)(4).

I should mention in passing that the total fees requested by Malpass amount to $49,344.16. The Lattugas' initial claim was for $18,163.03. The total administrative claims now being asserted are $68,055.02. The benefit that the estate received from the Lattugas' services was $50,000.

## DISCUSSION

The first issue to decide is whether attorneys fees incurred in defending a

§ 503(b)(3)(D) claim from post-allowance attack are reimbursable under § 503(b)(4).

Section 503 provides in pertinent part: (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including ...

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(D) a creditor ... in making a substantial contribution in a case under chapter 9 or 11 of this title ...

(4) reasonable compensation for professional services rendered by an attorney ... of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney....

In order for compensation to be awarded under § 503(b)(4) to a creditor's attorney, the creditor must successfully establish a claim under § 503(b)(3). The Lattugas did that and the BAP agreed. Accordingly, the condition for a § 503(b)(4) award for reimbursement of Malpass' fees has been established.

■ The § 503(b)(4) mandate is that the creditor receive reimbursement for his or her *reasonable* attorneys fees. The Lattugas now ask for reimbursement of Malpass' fees for defending these awards on appeal.

Minier, who has a Chapter 11 administrative claim for attorneys fees, and Trustee object. They argue that § 503(b)(4) is not applicable. Furthermore, even if some award is appropriate, the amount requested is unreasonable and any award is subordinate to chapter 7 administrative expenses.

In response, Malpass argues that under *In re Nucorp*, 764 F.2d 655 (9th Cir.1985), expenses involved in obtaining approval of professional fees in bankruptcy are reimbursable and this reasoning should extend to expenses incurred in defending a fee award on appeal. Additionally, the fees requested, although high, are reasonable and were necessary in light of the persistent and unreasonable attacks by Trustee. As to the question whether the fees should have priority over Chapter 11 administrative expenses, Malpass contends that the services were performed after conversion to Chapter 7 and, therefore, treatment as a Chapter 7 expense is appropriate.

In *Nucorp*, the attorneys for the debtors in possession applied for recovery of legal fees under § 330 of the Bankruptcy Code. In the final fee application, the attorneys requested compensation for time spent in preparing and presenting the fee application. The bankruptcy judge denied reimbursement for this time because it did not benefit the estate and, therefore, should not be compensable. *Id.* at 657.

In holding that this time was compensable, the Ninth Circuit acknowledged that attorneys seeking compensation under § 330 should be compensated for the "the 'actual, necessary' services that are normally compensable in other types of cases." *Id.* at 658. Therefore, "[I]t is necessary to determine whether such services are 'actual and necessary' and whether they are compensable in non-bankruptcy cases." *Id.* Applying the *Nucorp* principles to the matter at hand, I must determine if Malpass' services were necessary and generally compensable outside bankruptcy.

As to whether the services were necessary, it is clear to me that additional legal services are necessary when an appeal of a fee award is taken. A failure to respond may lead to a reversal and denial of the administrative claim. The Lattugas had no choice but to defend these awards.

Turning to the second issue, whether these services are compensable in the non-bankruptcy setting, the Ninth Circuit stated in *Nucorp* that in statutory fee cases

[F]ederal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable. In *Southeast Legal Defense Group v. Adams*, 657

F.2d 1118 (9th Cir.1981) we construed the Civil Rights Attorney's Fees Awards Act of 1976, ..., as implicitly authorizing compensation for time devoted to either the pursuit *or the defense of an appeal* challenging the district court's award of attorneys' fees. We reasoned that time spent litigating the proper amount of a fee award should be compensable because '[i]t would be inconsistent with the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee.' (quoting *Lund v. Affleck* 587 F.2d 75, 77 (1st Cir.1978)); see also *Spain v. Mountanos*, 690 F.2d 742, 747 (9th Cir. 1982) (§ 1988 implicitly authorizes compensation for time devoted to litigation in order to collect fee award); *Stanford Daily v. Zurcher*, 64 F.R.D 680, 683–84 (N.D.Cal.1974) (refusal to award fees for services related to collection would improperly dilute initial fee award). (citations omitted) (Emphasis added).

764 F.2d at 659–660.

An important component of whether services provided in a non-bankruptcy setting are compensable, therefore, is whether failure to award fees would dilute the initial fee award. In this matter, Malpass spent significantly more time defending the allowance of the Lattugas' administrative claims on appeal than he did establishing the administrative claims. If no fees were awarded for the appeal, the effective hourly rate for Malpass for the time he logged would potentially be reduced by two-thirds. "If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that claim, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased." *Id.* at 660. This is contrary to the intent of the Bankruptcy Reform Act "to ensure adequate compensation for bankruptcy attorneys so that highly qualified specialists would not be forced to abandon the practice of bankruptcy law in favor of more remunerative kinds of legal work...." *Id.* at 658.

The *Nucorp* court specifically stated that time devoted to "[E]ither pursuit of or the defense of an appeal" should be compensable. *Id.* at 660. This is exactly the situation here. Malpass, in order to preserve the Lattugas' administrative claims, had to defend and did defend the Lattugas' administrative claims on appeal.

Other courts support this reasoning. In *Nunley v. Jessee*, 92 B.R. 152 (W.D.Va. 1988), the court made a § 330 award of $110,000 for attorneys' fees plus expenses. The debtor appealed the award and lost. The deceased attorney's executrix thereafter sought to recover from the debtor a compensatory fee for the approximately two years of legal services rendered to protect the fee award on appeal. In awarding the additional fees, the *Nunley* court noted that "[I]n other types of civil cases in which attorneys' fees are statutorily allowed, litigants who prevail on a fee award initially are routinely entitled to additional fees required to defend those fees on appeal". *Id.* at 153. The court determined that there was "[N]o reason for treating bankruptcy cases any differently than cases arising in these other contexts." *Id.*

Attorneys fees in probate matters present an analogous situation to attorneys fees in bankruptcy in that in both cases the fee is set by the court pursuant to statutory authorization and paid out of an estate. In *Estate of Trynin*, 49 Cal.3d 868, 782 P.2d 232, 264 Cal.Rptr. 93 (1989), the attorney applicants, who represented the co-administrators of the estate in a civil action brought against them and in a subsequent appeal, sought recovery from the estate pursuant to California Probate Code § 910 for fees incurred in these actions. In a case of first impression, the court held that services provided to establish and defend a fee claim should be reimbursable. The court's rationale was that "[I]f counsel is not compensated for expenses reasonably incurred in fee litigation, the compensation award for the underlying services may be effectively diluted or dissipated, and the fee will vary with the nature of the opposition." *Id.* at 879, 782 P.2d 232, 264 Cal.Rptr. 93.

In summary, both case law and logic support the premise that reimbursement for reasonable attorneys fees incurred in defending a fee award on appeal should be available. The argument that a fee award is inappropriate in this circumstance because the estate does not benefit from such ongoing litigation may have surface appeal, but it lacks substance after analysis. Congress made the decision under § 330 and § 503(b)(4) to reimburse attorneys fees from the estate. In the case of § 330, Congress obviously felt that it was important to pay attorneys from the estate on a priority basis to provide an incentive for attorneys to represent debtors. Congress also believed it important to reimburse creditors under § 503(b)(4) for their attorneys fees incurred in providing a substantial benefit to the estate. In both situations the underlying purpose of these provisions would be subverted if the fee award could be diluted through the appeal process. Creditors could negotiate reductions in these fee awards knowing full well that the attorney is in a no-win situation. Even if the attorney prevails, he or she will have in effect financed the litigation without any hope of surviving it whole. This makes absolutely no sense. If that was the inevitable result, debtors and creditors would have substantial difficulties in retaining competent counsel in bankruptcy cases. Certainly, Congress did not have that end in mind. Accordingly, the Lattugas are entitled to reimbursement of Malpass' reasonable attorneys fees incurred in defending their administrative claims on appeal.

■ Turning now to the issue of reasonableness, § 503(b)(4) provides that the court may award to a professional person *"[R]easonable compensation* for professional services rendered...." (Emphasis added). Although I have determined that a substantial contribution has been made to the estate, it does not immediately follow that the Lattugas are entitled to reimbursement for all of Malpass' time irrespective of the reasonableness of the fee request. As indicated above, only those fees which are determined by the court to be reasonable are compensable.

■ In reviewing the request for fees under § 503(b)(4), I am required to review the time spent by the attorney, the necessity of the service, and the value of the service to the estate.

I have no reason to believe that the services were not performed or the time actually expended. Malpass' rate at the time the services were performed ranged from $150 to $225. He has applied, however, for the higher rate of $225 as an enhancement for all hours. I am unwilling to grant any enhancement. I accept his rates at the time the services were performed as being within the community standards.

I next turn to whether the services and time expended were necessary in light of the circumstances and the value of the services to the estate. The time spent by Malpass in connection with the defense of the Lattugas' claims on appeal can be broken down into the following categories:

| | |
|---|---|
| Legal research: | 16.8 |
| Preparation, review and revision of pleadings: | 65.9 |
| Preparation for and attendance at hearings: | 16 |
| Telephone conferences: | 13.3 |
| Preparation and review of correspondence: | 3.8 |
| Conferences: | 2 |
| TOTAL HOURS | 117.8 |

Malpass has also included as part of the claim a request for $1,417.50 for time spent in filing a response to Trustee's objection to the claim for attorney services. On September 6, 1988, I denied this request. Malpass filed a Motion for Reconsideration of this matter which I again denied on October 31, 1988. Accordingly, these fees will not be allowed and the time entries for these services have not been included in determining the amount of fees to be awarded.

Calculating Malpass' fee based upon time and rate applicable at the time the service was performed, I arrive at $23,405. By deducting the above $1,417.50 and adding law clerk and paralegal time of $1,743.75, I get $23,731.25. I shall, therefore, make applicable reductions from this amount since this is the maximum fee that I would possibly award.

Turning to those areas in which Malpass spent considerable time, he performed legal research amounting to $3,135.50. Malpass is an experienced bankruptcy attorney. The novelty and difficulty of the questions surrounding Trustee's appeal were not difficult. I do not see the need for 16.8 hours of research. This is especially true when I take into consideration the 13.25 hours of research performed by his law clerk. Accordingly, I will allow $2,500 for Malpass' research resulting in a reduction of $635.50.

Malpass charges $12,528 for preparation and revision of his own pleadings and review of opposing briefs. In addition, his law clerks spent 30.8 hours preparing pleadings. The total time is 96.7 hours. This is excessive. The issues were not that difficult and should not have required that much time. Accordingly, I reduce the amount requested by 25% or $3,132.

Charges for telephone conferences totalled $2,220. When reviewing the time entries, I determine that the number of phone calls were excessive. A more effective, efficient and organized approach towards accomplishing the tasks would have reduced the need for so many telephone calls. I, therefore, reduce this request by 50% or $1,110.

Time billed for various law clerks totalled $1,743.75. The blended hourly rate for these services is $37.10. This is reasonable and is allowed in full.

The total of the fees disallowed is $4,877.50. The total amount allowed Malpass, therefore, is $18,853.75 in fees and $547.86 in costs.

■ The third and final issue is whether the award of additional fees should be treated as an administrative expense under Chapter 7 or Chapter 11.

Section 726(b) provides in pertinent part that:

[A] claim allowed under section 503(b) of this title *incurred* under this chapter [7] after such conversion [conversion from Chapter 11 to Chapter 7] has priority over a claim allowed under section 503(b) of this title incurred under any other

chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title. (Emphasis added).

This provision specifically provides that administrative expenses incurred after conversion to Chapter 7 have priority over the Chapter 11 administrative expenses. This, however, does not answer the question of priority. Unquestionably, the services in question were performed after the case was converted to Chapter 7 from Chapter 11. Does this mean that § 726(b) mandates that I give the claim for Malpass's fees priority over Chapter 11 administrative expenses?

The Bankruptcy Code does not define the term "incurred" nor is there any case law that I could find on the issue. The policy underlying § 726(b), however, is clear. As explained in the legislative history "[L]iquidation administrative expenses are to be paid ahead of reorganization administrative expenses if the case has been converted from a reorganization case to a liquidation case...." H.R.Rep. No. 95–595 95th Cong., 1st Sess. 383 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6339. The purpose being that "Those who must wind up the affairs of a debtor's estate must be assured of payment, or else they will not participate in the liquidation or distribution of the estate" H.R. No. 95–595, 95th Cong., 1st Sess. 186–187 (1977); 1978 U.S.Code Cong. & Admin.News, 5787, 6147.

This rationale was well summarized by the court in *In re Codesco, Inc.*, 18 B.R. 225, 227 (Bankr.S.D.N.Y.1982):

The super-priority status for the so-called 'burial expenses' after the conversion was intended to provide an incentive to encourage capable trustees and professionals to act in superseding cases. *This purpose would be negated if liquidating administrative expenses of an aborted Chapter 11 case could also qualify for super-priority status in a converted Chapter 7 case."* (Emphasis added).

The BAP in *In re MacNeil*, 102 B.R. 766, 768 (9th Cir. BAP 1989), expressly recog-

nized and accepted the *Codesco* court's determination that only those administrative expenses directly related to the liquidation of the estate warrant Chapter 7 priority. As the *MacNeil* court stated "[I]t is evident that the superpriority status for 'burial expenses' was intended to encourage capable trustees and other professionals to partake in liquidation to maximize the benefit for those who seek satisfaction of their claims against the estate." *Id.* at 768 (citations omitted). Chapter 7 priority for administrative expenses should, therefore, be reserved for services that help "bury" the debtor.

The policy behind § 726(b), as evidenced by the legislative history and subsequent case law, is to encourage professionals to "partake" in the liquidation of the debtor. Malpass' fee was not a "burial expense", but rather an expense in furtherance of the Lattugas' Chapter 11 administrative claims. Hence, the rationale for § 726(b) does not support the allowance of Chapter 7 priority for Malpass.

Furthermore, the Lattugas' claim arose under § 503(b)(3)(D). This provision provides that a creditor shall be reimbursed for expenses incurred by the creditor in "[M]aking a substantial contribution in a case under *Chapter 9 or 11* of this title." (Emphasis added). The contribution made by the Lattugas was clearly made pre-conversion. Their claims were for salary for the period from February 1987 to June 1987. The conversion of the estate from Chapter 11 to Chapter 7 did not occur until August 31, 1987. The "substantial contribution" required by § 503(b)(3)(D) was, therefore, made during the Chapter 11.

Lastly, it is inherently unreasonable and inconsistent with the purpose of § 726(b) that a derivative claim under § 503(b)(4) would have a greater priority than the creditor's underlying claim under § 503(b)(3)(D). Such an anomalous result would place this claim for payment of attorneys fees to Malpass ahead of the Lattugas' administrative claims that originally gave rise to these extraordinary claims for attorneys fees. I am unwilling to twist the purpose of § 726(b) by giving it that effect.

Surely words should be given a meaning that makes rather than defies common sense.

For these reasons, the Lattugas are to be reimbursed for Malpass' fees and costs in the amount of $19,401.61 and this award is to be given Chapter 11 administrative priority.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum opinion shall constitute my findings of fact and conclusions of law.